728 A.2d 712

**STATE of Maryland**

v.

**Brian Lamont SOWELL.**

No. 98, Sept. Term, 1998.

Court of Appeals of Maryland.

April 29, 1999.

714

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for petitioner.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

Respondent Brian Lamont Sowell was convicted by a jury in the Circuit Court for Prince George's County of armed robbery, robbery, two counts of use of a handgun in the commission of a crime of violence, and first degree assault for his involvement along with three other men in the robbery of his employer, Recycling Incorporated.[1] He appealed to the Court of Special Appeals. That court reversed respondent's convictions, holding that the evidence presented to the jury was not sufficient to support a finding that respondent was present at the scene of the crime, either constructively or actually. Therefore, under the common law rules relating to principals and accessories, that court held that the respondent should not have been convicted as a principal in the second degree.

We granted a writ of certiorari to consider whether the common law distinction between principals and accessories remains viable in Maryland. We hold that it does. Accordingly, we shall affirm.

## I. Facts

On the date of the underlying crimes, October 17, 1995, respondent was employed by Recycling Incorporated. The company paid its employees' wages in cash, and the money normally was distributed by DeLisa Holmes, the office manager. Around 11:30 a.m., respondent called Recycling Incorporated's office to inquire when the payroll would be ready. Ms. Holmes told respondent the payroll would be ready at 12:00 p.m. Respondent then asked how the employees were going to be paid. Ms. Holmes replied that they would be paid in cash, to which respondent replied, "good." Respondent picked up his pay in cash at around 12:30 p.m.

---

1. Terrell Roshsay Pinkney was tried with respondent as a co-defendant and convicted of armed robbery, robbery, two counts of use of a handgun, false imprisonment, and first degree assault for his participation in the robbery at Recycling Incorporated. Mr. Pinkney and respondent both appealed to the Court of Special Appeals. That court affirmed the judgments as to Mr. Pinkney. Mr. Pinkney takes no part in the present appeal.

About an hour later, three men wearing dark clothing and carrying guns entered the Recycling Incorporated office. One man walked directly to Brian Fowler, the vice-president of the company, and held a gun on him. A second man put a gun to Ms. Holmes' head and told her to get the cash. She placed all of the cash, $14,600, in a bag provided by one of the men and the three men left. Ms. Holmes testified that the man who held the gun to her head seemed familiar with the office and knew where the money was located.

Testimony by other witnesses indicated that respondent was the mastermind behind the robbery. Anthony Williams testified that prior to the robbery, respondent told Williams he knew where they could get some easy money and that he had it "all planned out." Respondent targeted the recycling company because it paid its employees in cash and he knew how someone could get in and out quickly. Williams further testified that respondent had a map of the recycling center detailing where the employees would be standing, who should be grabbed, and who might have a gun. Respondent told the others that the robbery should occur between 11:30 a.m. and 12:30 p.m. and that while the robbery was in process, he would be on his route for the recycling company. The men arranged to meet later to split up the money. Williams further testified that he saw the men involved in the robbery the next day. Respondent said that "it was easy, just like he had planned."

## II. Discussion and Analysis

### A. Common Law Doctrine of Accessoryship

The question for which we issued the writ of certiorari and as phrased in the State's brief is: "Was the evidence sufficient to establish that [respondent] was an accomplice either because constructive presence is not required to establish accomplice liability or because he was constructively present?"

The underlying issue argued by both parties is whether Maryland should retain the common law distinction between principals and accessories before the fact. The Court of Special Appeals, although criticizing the long-standing Mary-

land common law rule that distinguishes an accessory before the fact from a principal in the second degree by the requirement that the principal be actually or constructively present, nonetheless reversed respondent's convictions as a principal in the second degree. That court held:

> There is, of course, a major legal hurdle regarding the State's request [to dispense with the distinction between accessories before the fact and principals]. The argument, in *Lewis* [*v. State,* 285 Md. 705, 404 A.2d 1073 (1979) ], to change the rule mandating that an accessory cannot be tried before the principal is sentenced, was presented to the Maryland Court of Appeals, the State court of last resort authorized to set policy. It may well be that that Court would be favorably disposed to dispense with the distinction between accessories and principals, particularly principals in the second degree. Until and unless the Court of Appeals effectuates such a change, we hold that the evidence before the jury neither directly nor inferentially permitted a finding that [respondent] was constructively or actually present at the scene of the crime. Therefore, he could have been convicted only of being an accessory before the fact, rather than a principal in the second degree. Accordingly, we must reverse the judgements of conviction of [respondent] Sowell.

*Sowell v. State,* 122 Md.App. 222, 238, 712 A.2d 96, 103–04 (1998).

■ This Court described the common law distinction between principals and accessories in *State v. Ward,* 284 Md. 189, 197, 396 A.2d 1041, 1046–47 (1978):

> A *principal in the first degree* is one who actually commits a crime, either by his own hand, or by an inanimate agency, or by an innocent human agent. A *principal in the second degree* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive. An *accessory before the fact* is one who is guilty of felony by reason of having aided, counseled, commanded

or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration. An *accessory after the fact* is one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment.

The main difference between an accessory before the fact and a principal in the second degree is that the latter must be actually or constructively present at the scene of the crime.

As noted by the Court of Special Appeals in its opinion below, the distinction has not been without criticism. In *State v. Williamson,* 282 Md. 100, 112–14, 382 A.2d 588, 594–95 (1978), Judge Levine, concurring, took issue with the majority's failure to abandon the accessory before the fact distinction:

> Since accessories and principals at common law were deemed to be equally culpable and therefore subject to the same punishment, *Agresti v. State,* 2 Md.App. at 281, [234 A.2d 284]; 1 J. Chitty, *A Practical Treatise on the Criminal Law* *267 (1819); Clark & Marshall, *A Treatise on the Law of Crimes* § 8.05, at 522 (7th ed.1967), the classification of parties as principals and accessories had little, if any, substantive significance.
>
> On the other hand, the common law doctrines of accessoryship did give rise to several highly technical procedural rules which, as one recent commentator has stated, "tended to shield accessories from punishment notwithstanding overwhelming evidence of their criminal assistance." W. La-Fave & A. Scott, *Handbook on Criminal Law* § 63, at 498–99 (1972)....
>
> ....
>
> The reason for the development of these rules is obscure at best. Professor Perkins has speculated that they were devised by 14th and 15th century English common law courts as a means of alleviating the harshness of the death penalty in felony cases. R. Perkins, *Criminal Law* 669 (2d ed.1969); *and see* W. LaFave & A. Scott, *Handbook on*

*Criminal Law* § 63, at 499 (1972). If this theory of the historical provenience of the common law categories and procedures be correct, it is now beyond question that the rules have outlived their purpose, in light of the universal rejection of capital punishment for any but the most heinous felonies and the manifold constitutional restrictions placed upon application of the death penalty in recent years. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).[2]

The common law principles of accomplicity and their procedural counterparts, in my opinion, have injected a most undesirable hypertechnicality into the law of accomplice responsibility, which not infrequently operates to thwart justice and reduce judicial efficiency. *See* Note, 19 Wash. & Lee L.Rev. 96 (1962). As this Court candidly stated in *Watson v. State,* 208 Md. at 218, [117 A.2d 549]:

> " 'This distinguishing of the accessory before the fact from the principal is a pure technicality. It has no existence either in natural reason or the ordinary doctrines of the law. For in natural reason the procurer of a crime is not chargeable differently from the doer; and a familiar rule of the common law is that what one does through another's agency is regarded as done by himself.... Likewise in morals, there are circumstances wherein we attach more blame to the accessory before the fact than to his principal; ....' " (Quoting 1 J. Bishop, *Criminal Law* § 673, at 486–87 (9th ed.1923)).

The time has come in my opinion to discard the common law distinction between principals and accessories before the fact and to replace these categories with an all-encompassing doctrine which would treat all those who knowingly procure, command, counsel, encourage, aid or abet a felon in the commission of a crime as principals regardless of wheth-

---

**2.** Many of these restrictions on the application of the death penalty subsequently have been modified.

er the aider or abettor was actually or constructively present at the scene of the crime.

Similar sentiments have been expressed by this Court, but only with regard to the technical procedural rules accompanying the common law doctrine of accessoryship. *See, e.g., Jones v. State,* 302 Md. 153, 160–61, 486 A.2d 184, 188 (1985) (criticizing as illogical and unreasonable the common law rules that the principal must be convicted before the accessory and that the accessory cannot be convicted of a higher crime than the principal); *Lewis,* 285 Md. at 715, 404 A.2d at 1079 (recognizing as unsound "the common law rule precluding trial of an accessory until the principal is sentenced"); *Ward,* 284 Md. at 192, 396 A.2d at 1043–44 (pointing out that the technical procedural rules accompanying the common law doctrine of accessoryship are illogical and "shield accessories from punishment notwithstanding overwhelming evidence of their criminal assistance").

Even though in Maryland the common law may be modified by legislative act, Maryland Declaration of Rights, Article 5(a), or by judicial decision, *see State v. Hawkins,* 326 Md. 270, 291–92, 604 A.2d 489, 500–01 (1992), we commented in *Ward* that "Maryland is one of the few, if not the only state, which has retained this doctrine in virtually the same form as it existed at the time of William Blackstone in the 18th century, and it represents the law of Maryland at the present time." *Ward,* 284 Md. at 191, 396 A.2d at 1043.

All of the states substantively modifying the common law rule appear to have done so legislatively. The states that have legislatively modified the common law by explicit statutory language abolishing the distinction or language legislatively nullifying the distinction, albeit retaining some of the common law terminology, are Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island,

South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. *See* MODEL PENAL CODE § 2.04, App. at 40–41 (Tentative Draft No. 1, 1956) ("Every American jurisdiction except Maryland has also legislated on the subject."); MODEL PENAL CODE § 2.06 cmt. 1, n. 3 (1985) (Official Draft and Revised Comments). *See also* WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW § 6.6(e), at 574–75 (2d ed.1986).[3] Even the birthplace of the common law, England, abrogated some of the technicalities of the doctrine of accessoryship, albeit by legislative reform. *See id.* (citing The Accessories and Abettors Act, 1861, 24 & 25 Viced. ch. 94 (Eng.)).

■ This Court has abrogated judicially some aspects of the common law of accessoryship. For instance, in *Hawkins*, 326 Md. at 294, 604 A.2d at 501, we abolished the common law

---

3. California, for example, expressly abrogated the common law distinction and the need to indict an accused specifically as a principal or an accessory in 1872. *See* CAL.PENAL CODE, § 971 (West 1985). That statute provides:

> The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, who by the operation of other provisions of this code are principals therein, shall hereafter be prosecuted, tried and punished as principals and no other facts need be alleged in any·accusatory pleading against any such person than are required in an accusatory pleading against a principal.

Alabama similarly abolished the common law distinction between an accessory before the fact and a principal as well as the distinction between principals in the first and second degree as early as 1852. *See Stokley v. State,* 254 Ala. 534, 541, 49 So.2d 284, 290 (1950); ALA.CODE § 13A–2–20 (1994) & Commentary ("In effect, this [section abrogates] the distinction which was once drawn between principals and accessories....").

The Pennsylvania legislature opted for a slightly different approach by maintaining the distinctions between principals and accessories, but legislatively providing that accomplices may be guilty of the offense as a principal, 18 PA. CONS.STAT. ANN. § 306(a), (b)(3) & (c) (West 1998), even if the principal has not been convicted. *Id.* § 306(g). A Vermont statute similarly maintains the distinctions between principals and accessories, but provides that accessories may be punished as a principal, *see* VT. STAT. ANN. tit. 13, § 3 (1998), and need not be specifically charged. *See id.* § 4. *See also State v. Brown,* 147 Vt. 324, 327, 515 A.2d 1059, 1062 (1986).

limitation that an accessory after the fact may not be a principal in either degree in the commission of a substantive felony. In *Jones,* 302 Md. at 159–61, 486 A.2d at 188, we held that an accessory before the fact may be convicted of a greater crime than the principal. *Lewis,* 285 Md. at 715–16, 404 A.2d at 1077–78, abrogated the common law requirement that a principal must be convicted before the accessory. Finally, in *Ward,* 284 Md. at 207, 396 A.2d at 1048, we held that there may be an accessory before the fact for murder in the second degree. Nonetheless, this Court has yet to address expressly the specific issue at hand of whether Maryland should abandon the common law doctrine of accessoryship. *See Ward,* 284 Md. at 191 n. 3, 396 A.2d at 1043 n. 3; *Williamson,* 282 Md. at 110, 382 A.2d at 593. This Court is not precluded from altering a common law rule in situations in which "in light of changed conditions or increased knowledge, . . . the rule has become unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people." *State v. Wiegmann,* 350 Md. 585, 604, 714 A.2d 841, 850 (1998) (quoting *Harrison,* 295 Md. at 459, 456 A.2d at 903). *See also Gaver v. Harrant,* 316 Md. 17, 28, 557 A.2d 210, 216 (1989); *State v. Minster,* 302 Md. 240, 245–46, 486 A.2d 1197, 1199–1200 (1985); *Williams v. State,* 292 Md. 201, 217, 438 A.2d 1301, 1309 (1981); *Felder v. Butler,* 292 Md. 174, 182–83, 438 A.2d 494, 499 (1981); *Adler v. American Standard Corp.,* 291 Md. 31, 42–43, 432 A.2d 464, 471 (1981); *Condore v. Prince George's County,* 289 Md. 516, 530–31, 425 A.2d 1011, 1018 (1981); *Kline v. Ansell,* 287 Md. 585, 590, 414 A.2d 929, 931 (1980); *White v. King,* 244 Md. 348, 354, 223 A.2d 763, 767 (1966).

"[I]n considering whether a long-established common law rule—unchanged by the legislature and thus reflective of this state's public policy—is unsound in the circumstances of modern life, we have always recognized that declaration of the public policy of Maryland is normally the function of the General Assembly." *Gaver,* 316 Md. at 28–29, 557 A.2d at 216 (quoting *Harrison,* 295 Md. at 460, 456 A.2d at 903). We have recognized that the General Assembly's failure to amend or

abrogate a common law rule sometimes reflects its desired public policy. *See Wiegmann,* 350 Md. at 605, 714 A.2d at 850–51.

The Legislature did relax an aspect of accessoryship in 1906 when it amended the formal requirements for indictments in homicide cases, allowing the State to charge an accused as either a principal or accessory with one form. *See* 1906 Md. Laws, Chap. 248. That provision provided: "In any indictment for murder or manslaughter, *or for being an accessory thereto,* it shall not be necessary to set forth the manner or means of death." (Emphasis added.) We explained the intent behind the statute:

> "Statutes similar in character to that now under consideration have been enacted in many of the American states as well as in England, in an effort to escape the excessive formalism of the common law, which formerly made the conviction or acquittal of one charged with crime so often turn upon some technical quibble rather than upon the guilt or innocence of the accused, and the uniform tendency of the courts has been to uphold them wherever that could be done without infringing the right of the accused to the protection of such constitutional guarantees, as the right to be informed of the charge against him."

*Williamson,* 282 Md. at 109–10, 382 A.2d at 593 (quoting *Neusbaum v. State,* 156 Md. 149, 157–58, 143 A. 872, 876 (1928)). We additionally noted in *Williamson* that no other significant or otherwise relevant amendment to the provision had occurred since the 1906 Act. *Id.* at 109, 382 A.2d at 593.

Tellingly, the Legislature has not, since the 1906 Act relating only to homicide, attempted to abrogate the common law doctrine of accessoryship for any other crime. In fact, as recently as 1994, the Committee Note[4] to 1994 Maryland Laws, Chapter 712 indicated with regard to the revision of the burglary and related offenses provision: "Current [statutory]

---

4. The Committee to Revise Article 27—Crimes and Punishments of the Annotated Code of Maryland.

provisions referring to an 'accessory before the fact' or to 'causing', 'aiding', or 'counselling' a burglary offense have been repealed. The Committee believes that the common law on accomplice liability adequately covers these types of actions." The Legislature thus chose to continue to allow the law of accessoryship to be controlled by the common law with its enactment of Chapter 712. It did so despite several opinions by this Court limiting the doctrine's technical rules and expressing some disagreement with the restrictions of the common law. The Legislature is presumed to be aware of this Court's holdings. *See Wiegmann,* 350 Md. at 606, 714 A.2d at 851.

As petitioner notes and as we readily have admitted, several opinions written by this Court over the course of the last twenty years have abrogated certain requirements relating to accessoryship, such as the requirement that a principal must be convicted before the accessory. *See Lewis,* 285 Md. at 716, 404 A.2d at 1079. What is important to note is that these opinions abrogated merely the "technical procedural rules accompanying the common law doctrine of accessoryship." *Id.* at 715, 404 A.2d at 1079. For instance, the procedural rule rejected in *Lewis* related to when the accessory may be tried, not the doctrine of accessoryship itself. Similarly, in *Jones,* 302 Md. at 160–61, 486 A.2d at 188, we held an accessory before the fact may be convicted of a greater crime than the principal, noting that

> [m]erely because the evidence in the principal's trial may have been different, or the principal may have agreed to a favorable plea bargain arrangement, or the jury in the principal's trial may have arrived at a compromise verdict, is not a good reason for allowing the accessory to escape the consequences of having committed a particular offense.

*Id.* at 161, 486 A.2d at 188. In *Jones* we only abrogated a procedural aspect of the doctrine of accessoryship, not the doctrine.

Finally, as we mentioned, *supra,* although Maryland apparently is the only jurisdiction that has not rejected the

common law distinctions between principals and accessories, the majority of the other jurisdictions rejecting the distinctions have done so legislatively. Given the relative importance in completely abrogating an ancient and historic common law doctrine such as accessoryship, we believe such a task is generally better left to the legislative body of this State. *See, e.g., Wiegmann,* 350 Md. at 607, 714 A.2d at 851–52 (declining to abolish the common law rule permitting persons to resist illegal arrests). We decline, at this time, to abrogate the doctrine by judicial action.

## B. Constructive Presence

▆ Because we decline to abolish the common law distinctions between principals and accessories, we must address whether the Court of Special Appeals erred in holding "the evidence before the jury neither directly nor inferentially permitted a finding that [respondent] was constructively or actually present at the scene of the crime." *Sowell,* 122 Md.App. at 238, 712 A.2d at 104. The standard for our review of the sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056, 1057 (1986) (citing *Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560 (1979)); *see also State v. Albrecht,* 336 Md. 475, 478–79, 649 A.2d 336, 337 (1994); *Dawson v. State,* 329 Md. 275, 281, 619 A.2d 111, 114 (1993); *McMillian v. State,* 325 Md. 272, 289, 600 A.2d 430, 439 (1992); *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831, 833 (1990). Our concern, therefore, is not whether the verdict was in accord with the weight of the evidence but rather, whether there was sufficient evidence produced at trial "that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998); *Albrecht,* 336 Md. at 479, 649 A.2d at 337.

The indictment, as relevant to the issue before the Court, provided in the first count: "The Grand Jurors ... do present that Brian Lamont Sowell ... feloniously with a dangerous and deadly weapon did rob ... and violently did steal." The second count provided that respondent "feloniously did rob ... and violently did steal." In the third and sixth count, the indictment provided: "The Grand Jurors ... do present that Brian Lamont Sowell ... did unlawfully use a handgun in the commission of a crime of violence." In the seventh count, the indictment provided: "The Grand Jurors ... do present that Brian Lamont Sowell ... did unlawfully assault."[5] As is evident, the language of the indictment fails to charge respondent specifically as a principal or as an accessory. There is no indication in the record, however, that respondent moved to dismiss this indictment.

The Court of Special Appeals long has recognized that the State must charge a defendant correctly as a principal or accessory. For example, that court explained in great detail in *Agresti v. State,* 2 Md.App. 278, 281, 234 A.2d 284, 286 (1967):

> Although at common law an accessory before the fact is liable to the same punishment as the principal, the distinction between them is important in practice unless the distinction has been changed by statute. At common law, an indictment must charge a person correctly as principal or accessory according to the facts and on an indictment charging a person as principal there could be no conviction on evidence showing that he was merely an accessory and vice versa. *Clark and Marshall, Crimes, supra,* § 8.05, p. 462; *Sanders v. State,* 1 Md.App. 630, 232 A.2d 555. It is stated in *Perkins on Criminal Law* (1957), ch. 6, § 8, D, 1 b, page 583:

---

**5.** The fifth count of the indictment provided: "The Grand Jurors ... do present that Brian Lamont Sowell ... did unlawfully falsely imprison." Respondent was acquitted of this charge. The remaining counts of the indictment were dismissed by nolle prosequi.

"The case may be lost in advance either by carelessness in the pleading or by a mistaken notion as to whether the particular defendant was or was not present at the time the crime was committed. One charged with felony as a principal cannot be convicted if the evidence established assessorial guilt, and one charged as an accessory cannot be convicted if the evidence shows him to have been a principal. One may be charged as a principal and as an accessory in separate counts of the same indictment, but the prosecution can be required to elect upon which count it will rely before the case is finally submitted to the jury."

See also *McBryde v. State,* 30 Md.App. 357, 360–61, 352 A.2d 324, 327 (1976); *Huff v. State,* 23 Md.App. 211, 214–15, 326 A.2d 198, 201 (1974), *cert. denied,* 273 Md. 721 (1975).

In *Williamson,* 282 Md. at 107–08, 382 A.2d at 592, this Court, after discussing the Court of Special Appeals' holdings, *supra,* described the modern tendency of courts to shy away from the "strict requirements" for common law indictments. We then went on to hold that the defendant in that case need not have been indicted specifically as an accessory or principal because the General Assembly by legislative enactment relaxed the formal indictment requirements for accomplices in cases of homicide. 1906 Md. Laws, Chap. 248. No such legislative acts have relaxed the requirements for specifically charging defendants as an accessory or principal to robbery or robbery with a deadly weapon.[6]

---

**6.** The Legislature amended the punishment and set forth an optional form of indictment for robbery and robbery with a deadly weapon. *See* Md.Code (1957, 1996 Repl.Vol.), Art. 27, §§ 486, 487, 488, & 489. As we have recognized, however, sections 486 and 488 do not create separate statutory offenses but merely fix the penalties for the crimes of robbery and robbery with a deadly weapon. *Eldridge v. State,* 329 Md. 307, 311 n. 3, 619 A.2d 531, 533 n. 3 (1993). That being said, as the Court of Special Appeals has noted, an accessory to the crimes of robbery or attempt to rob with a deadly weapon is not made a principal by the language of these sections. *Agresti,* 2 Md.App. at 282–83, 234 A.2d at 286–87.

The State evidently proceeded under the theory that respondent was charged as a principal, as that is what the judge instructed the jury to consider:

I also instruct you at this time, folks, on the doctrine of aiding and abetting. The Defendants are charged with the crimes of robbery with a dangerous weapon, robbery, use of a handgun in the commission of a crime of violence, two times, and first degree assault.

A person who aids and abets in the commission of a crime is as guilty as the actual perpetrator, even though he did not personally commit each of the acts that constitutes the crime.

A person aids and abets the commission of a crime by knowingly associating with the criminal venture with the intent to help commit the crime, *being present when the crime is committed,* and seeking by some act to make the act succeed.

In order to prove that the Defendants aided and abetted the commission of a crime, the State must prove that the Defendants were *present when the crime was committed,* and that the Defendants willfully participated with the intent to make the crime succeed.

*Presence means being at the scene or close enough to render assistance to other perpetrators.*

Willful participation means voluntary and intentional participation in the criminal act.

Some conduct by the Defendants in furtherance of the crime is necessary. The mere presence of the Defendants at the time and place of the commission of the crime is not enough to prove that they aided and abetted. But if presence is proven, it is a fact that may be considered along with all of the surrounding circumstances.

However, *presence at the scene of a crime can be sufficient, if it was intended to and does aid the primary actor;* for example, standing by as a lookout to warn the primary actor of danger. [Emphasis added.]

From the record, it appears the State made no objection to this instruction.[7] We therefore must proceed on the assumption that it intended to charge respondent as a principal in the second degree because the jury never was instructed on the law as to accessories before the fact.

Before this Court, the parties do not dispute that respondent was not actually present during the commission of the robbery and concede the only issue is whether he was constructively present. In *Ward,* 284 Md. at 197, 396 A.2d at 1046–47, we explained that

[a] *principal in the second degree* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive. An *accessory before the fact* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration.

We further described in detail the distinction between principals in the second degree and accessories before the fact in *Williamson,* 282 Md. at 103–04, 382 A.2d at 590 (quoting 4 W. Blackstone, *Commentaries* ):

"A principal in the ... second degree ... is who is present, aiding and abetting the fact to be done. Which *presence* need not always be an actual immediate standing by, within sight or hearing of the fact; but there may be also a constructive presence, as when one commits a robbery or murder and another keeps watch or guard at some conve-

---

7. Although it is not entirely clear from the record, it appears respondent's attorney excepted to the type of accomplice instruction given by the judge: "Your Honor, I except to the following: As to accomplice liability, I believe the Court should have given the accomplice liability in the jury instruction book referred to as the A accomplice. The Court gave B." The Court responded, "I said may," to which respondent's attorney replied, "Right, may instead of is. The Court should have given the A section, which is 3:11." Although the record does not indicate how the judge ruled on this exception, this issue is not in dispute in the case before us.

nient distance." *Id.* 282 Md. at 103, 382 A.2d at 590. (Emphasis in original.) (Footnotes omitted.)

"As to the second point, who may be an accessary *before* the fact; Sir Matthew Hale defines him to be one who, being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime. Herein absence is necessary to make him an accessary; for if such procurer, or the like, be present, he is guilty of the crime as principal."

 The concept of constructive presence is fairly broad, as one need not be in sight or hearing of the crime being committed to be a principal in the second degree. The test is not whether the alleged principal in the second degree could see the scene of the crime, but whether he or she could render assistance to the actual perpetrator. *See Williamson*, 282 Md. at 105, 382 A.2d at 591 ("A person is regarded as constructively present, within the rules relating to parties in criminal cases, whenever he is cooperating with the perpetrator and is so situated as to be able to aid him, with a view known to the other, to insure success in the accomplishment of the common purpose." (quotations and citation omitted)); *McBryde*, 30 Md.App. at 360, 352 A.2d at 326 ("A person is constructively present, hence guilty as a principal, if he is acting with the person who actually commits the deed in pursuance of a common design, and is aiding his associate, either by keeping watch or otherwise or is so situated as to be able to aid him, with a view, known to the other, to insure success in the accomplishment of the common enterprise." (citation omitted)). In *Williamson*, for example, even though the defendant was physically close enough to the scene of her husband's murder to render assistance to the killer, there was no evidence that she in fact was present in order to render aid of any kind; thus she could not, even though nearby, be convicted as a principal in the second degree.[8] *Williamson*, 282 Md. at 105, 382 A.2d at 591. By contrast, the defendants in

---

8. The defendant was asleep in the house when her husband was killed inside a car in their driveway.

*McBryde,* although not within sight of the scene of the crime, were waiting nearby to aid the principal in the first degree in his escape after he robbed a convenience store and thus were principals in the second degree. *McBryde,* 30 Md.App. at 360, 352 A.2d at 326–27. The common element in constructive presence for the purpose of proving a defendant was a principal in the second degree, therefore, is the ability, desire, and design to render any necessary aid to the principal in the first degree during the commission of the crime.

One commentator is in accord with this interpretation:

A person is constructively present when he is physically absent from the situs of the crime but aids and abets the principal in the first degree at the time of the offense from some distance. This may happen when one stands watch for the primary actor, signals to the principal from a distance that the victim is coming, or stands ready (though out of sight) to render aid to the principal if needed. However, one must be close enough to render aid if needed.

LaFave & Scott, *supra,* § 6.6(b), at 571 (footnotes omitted). *See also Commonwealth v. Allen,* 441 S.W.2d 424, 429 (Ky. 1969), a case in which the Kentucky Supreme Court held the defendant liable as a principal in the second degree for the sale of unregistered stocks because even though he was not physically present at the scene of the crime, he made himself available at his home and office by telephone to aid in the commission of the sale. The court noted that "[t]he requirement of 'constructive presence' is satisfied if the aider and abettor can (1) arrive on the scene if necessary to render aid and assistance in the perpetration of the crime, or (2) watch out for trouble and give the perpetrator of the crime information of approaching danger, or (3) take part in aiding the escape of the perpetrator after the commission of the crime." *See also State v. Gregory,* 37 N.C.App. 693, 695, 247 S.E.2d 19, 21 (1978) ("Actual distance from the scene is not always determinative of constructive presence; however, defendant must be close enough to be able to render assistance if needed and to encourage the crime's actual perpetration.").

Turning to the case at hand, the evidence tended to show that respondent went to Recycling Incorporated to pick up his wages at approximately 12:30 p.m. About an hour later, the three men who ultimately committed the robbery and other crimes entered Recycling Incorporated's offices and took the cash. Respondent was not present on the premises or nearby when the crimes took place. One witness testified that prior to the commission of the crimes, respondent drove to the area where the actors were waiting in parked cars and told them to go ahead. The witness testified:

A. He pulls up to the car, his side of the car in the front.

Q. And then drives off?

A. He says go ahead.

Q. You drive off and [respondent] drives off?

A. Yes.

Q. Their car is there, your car is there, Smoot's car is there, and [respondent] goes off in a different direction?

A. Yes.

Q. *He drives his car off, and he's out of sight, right?*

A. Yes. [Emphasis added.]

Another witness testified as to the following:

Q. . . . . [W]hat, if anything, did [respondent] say about where he would be when the robbery took place?

. . . .

THE WITNESS: *He said he was going to go out on his route so it wouldn't look like he had anything to do with it,* and that he would meet them back around Tuley Street right after everything happened, and then they would split the money up. [Emphasis added.]

 There was no evidence presented that respondent waited as a lookout or in a getaway car during the robbery. In fact, the evidence showed that respondent purposefully absented himself from the scene of the crime to avoid suspicion about his involvement. That he "scouted out" the situation *before* the robbery and signaled to the actors to "go ahead" with their plan, although making him an accessory

before the fact, does not render respondent actually or constructively present during the crime for purposes of principal in the second degree liability. There was no evidence that respondent had the ability to render aid to the principals during the actual commission of the crimes. Although the evidence tended to show that respondent was the mastermind of the robbery and planned the crimes from beginning to end, the simple fact is that he was not present, either actually or constructively, during the commission of these crimes. Accordingly, we hold there was not sufficient evidence from which to convict respondent as a principal in the second degree.

### III. Conclusion

We hold that until the Legislature provides otherwise, Maryland retains the common law distinction between principals and accessories. Respondent was tried only as a principal in the second degree, which requires presence, not as an accessory before the fact, which does not require presence. Accordingly, we must affirm the Court of Special Appeals and reverse respondent's convictions because there was not sufficient evidence to find that he was present, actually or constructively, at the scene of the crime.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

RAKER, Judge, concurring:

I concur only in the judgment of the Court. I agree with the majority that the evidence was insufficient to establish that Sowell was a principal in the first or second degree and that, under the current state of the law in Maryland, his conviction must be reversed. I part company with the majority, however, because I believe that the time has come for this Court to abolish the common law distinction in charging between principals and accessories.

Twenty-two years ago, two distinguished Maryland jurists called for the abolition of the useless common law distinction between principals and accessories. *See State v. Williamson,* 282 Md. 100, 382 A.2d 588 (1978) (Levine, J., concurring) and *Williamson v. State,* 36 Md.App. 405, 374 A.2d 909 (1977) (Lowe, J., dissenting), *reversed, State v. Williamson,* 282 Md. 100, 382 A.2d 588 (1978). Although this Court has chipped away at this distinction, Maryland remains the only state in the country to retain this doctrine.[1] *See* Maj. op. at 720; *State v. Ward,* 284 Md. 189, 191, 396 A.2d 1041, 1043 (1978), *overruled on other grounds, Lewis v. State,* 285 Md. 705, 404 A.2d 1073 (1979). To echo the words of Judge Irving Levine, the time has come to discard the *common law* distinction between principals and accessories before the fact and to replace these categories with an all-encompassing doctrine which would treat all those who knowingly procure, command, counsel, encourage, aid or abet a felon in the commission of a crime as principals regardless of whether the actor was present at the place of the crime. *See State v. Williamson,* 282 Md. at 114, 382 A.2d at 595.

Writing for the Court of Special Appeals in *Williamson,* 36 Md.App. at 413, 374 A.2d at 914, Judge Thomas Hunter Lowe, in his perfervid dissent, noted the futility in awaiting a legislative change of the common law distinction between accessories before the fact and principals. He wrote:

It is hardly conceivable that in the 20th Century, a court of last resort could so clearly recognize the utter purposelessness of so horrendously harmful a semantic distinction,

---

1. This Court has changed some aspects of the common law of accessoryship. For example, *see State v. Hawkins,* 326 Md. 270, 604 A.2d 489 (1992) (Orth, J.) (Court of Appeals changed common law rule of accessoryship to allow verdict of guilty as an accessory after the fact along with verdict of guilty on the substantive offense); *Jones v. State,* 302 Md. 153, 486 A.2d 184 (1985) (Eldridge, J.) (Court of Appeals changed common law rule to allow accessory before the fact to be convicted of a greater crime than that of which the principal was convicted); *Lewis v. State,* 285 Md. 705, 404 A.2d 1073 (1979) (Eldridge, J.) (Court of Appeals changed common law to allow accessories before the fact and accessories after to the fact to be tried before the principal in certain circumstances).

yet must still recognize its viability. Worse yet is the fact that more than two decades have passed since this 'pure technicality ... [which] has no existence either in natural reason or the ordinary doctrines of the law ...' was held up to ridicule in that case, and the Legislature has done nothing to correct it. Nor did our own attempt at flagging this fictional foolishness in *Agresti v. State,* 2 Md.App. 278, 281, 234 A.2d 284, elicit a statutory erasure of that common law blot upon jurisdictional reasoning, as has been accomplished in many, if not most common law jurisdictions. See 40 Am.Jur.2d, *Homicide* §§ 28, 29; 21 Am.Jur.2d, *Criminal Law* §§ 120–124; 22 C.J.S. *Criminal Law* § 82; see also 95 A.L.R.2d 175, 178, 187.

(Alteration and omissions in original) (footnote omitted).

The judicial system and the common law created the doctrine in question, and thus, it is appropriate for the judicial branch of government to correct the anomaly when we recognize that the distinction is not practical, useful, or fair. As Judge Lowe noted:

This has caused us factually to distinguish and interpretatively whittle away at the rule, but such intellectual exercises hardly do justice to the judicial system. Because it was not the legislative branch but the common law judicial system that created the technical monster, I would no longer await the action of a Legislature which may well be too occupied with matters of state to clean up the jurisprudential cobwebs we have accumulated. The common law is a growing thing and when it outgrows old garments not only of no further use but of potential harm, they should be discarded.

*Id.* at 413–14, 374 A.2d at 914.

This Court, in this case, should change the law, to be applied prospectively, and should no longer cling to a common law rule that has been rejected by *every* state in the nation. Whatever may have been the reason for the rule governing the indictment of the actor as a principal or accessory before the fact, that reason, as we noted in *Lewis* regarding the

sequence of the principal's and accessory's trials, has long since disappeared. As observed by Judge Levine in *Williamson*, and Judge Eldridge in *Lewis*, the procedural rules probably were devised by 14th and 15th century English courts as a means of alleviating the harshness of the death penalty in all felony cases. *Williamson*, 282 Md. at 113, 382 A.2d at 595; *Lewis*, 285 Md. at 715, 404 A.2d at 1079; *see also Watson v. State*, 208 Md. at 219, 117 A.2d at 553; 1 J. BISHOP, CRIMINAL LAW § 673, at 486–87 (9th ed.1923). Today, the death penalty in Maryland, with two exceptions, is reserved for principals in the first degree, and thus, the original purpose of the distinction—to restrict excessive executions when all felonies were punishable by death—no longer exists.[2] *See* PERKINS & BOYCE, CRIMINAL LAW, *Parties to Crime* at 759 (3d ed. 1982) ("Since the reason for the principal-accessory distinction ceased to exist when most felonies were removed from the category of capital crimes, the distinction itself should be abrogated . . ."). Further, the punishment for accessories before the fact in Maryland is the same as for principals. *See Ward*, 284 Md. at 210, 396 A.2d at 1053 ("As an accessory before the fact he is punished as a partaker of the guilt of the principal and is liable to the same punishment as the principal."). The distinction has outlived its purpose.

The majority recounts the recent occasions this Court has changed the common law as to principals and accessories, but distinguishes those cases on the ground that the changes were merely technical changes. Maj. op. at 725. *See, e.g., Lewis v.*

---

**2.** The first exception, recently enacted by the Legislature, is that a principal in the second degree is death-eligible for the murder of a law enforcement officer killed in the performance of his duties, if the principal willfully, deliberately, and with premeditation intended the death of the law enforcement officer, was a major participant in the murder, and was actually present at the time and place of the murder. Chapter 538, Acts of 1998, effective October 1, 1998 (codified at Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.), Article 27, § 413(d)(1), (e)(1)). The second exception is that a person who engages or employs another person to commit murder is death-eligible where the murder was committed pursuant to an agreement or contract for remuneration or the promise of remuneration. Art. 27, § 413(d)(7), (e)(1)(i).

*State,* 285 Md. at 715, 404 A.2d at 1079 (noting that "the technical procedural rules accompanying the common law doctrine of accessoryship are illogical"). The majority misconstrues the Court's reference to *technical procedural rules.* The common law requirement that an actor be charged either as a principal or an accessory before the fact falls within this Court's concept of technical procedural rules and is a distinction without a difference. As Judge Levine explained in his concurring opinion in *Williamson,* 282 Md. at 112–13, 382 A.2d at 594–95:

> [T]he common law doctrines of accessoryship did give rise to several highly technical procedural rules which, as one recent commentator has stated, "tended to shield accessories from punishment notwithstanding overwhelming evidence of their criminal assistance." W. LaFave & A. Scott, *Handbook on Criminal Law* § 63, at 498–99 (1972). These rules make their appearance in essentially three areas: 1) jurisdiction; 2) trial; and 3) pleading. As to the first, jurisdiction, the rule was that an accessory could be put on trial only in that jurisdiction in which the act of accessoryship was committed, irrespective of the situs of the felony itself. *State v. Chapin,* 17 Ark. 561, 566 (1856); R. Perkins, *Criminal Law* 671 (2d ed.1969).
>
> Insofar as trial procedure is concerned, an accessory before the fact at common law could not be tried before the principal. Thus, if the principal were acquitted or his identity never established, an accessory to the felony could never be brought to trial, thereby escaping punishment altogether. *Commonwealth v. Phillips,* 16 Mass. 423, 425 (1820); L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 38, at 23 (1897).
>
> Finally, the rule as to pleading, invoked by the Court of Special Appeals to reverse appellee's conviction, has produced the result that one charged with the commission of a felony as a principal cannot be convicted of that crime if the evidence actually produced shows only that the accused had acted as an accessory before the fact. *Agresti v. State,* 2

Md.App. at 284, 234 A.2d 284.[3] Conversely, if an individual is charged in the indictment solely as an accessory before the fact, subsequent proof of his guilt as a principal will not result in a conviction. *McBryde and Bland v. State,* 30 Md.App. [357] at 360[, 352 A.2d 324].

We are dealing here with the procedural, technical common law rule as to pleading and a variance between the charge and the proof "spread over the principal and accessory categories." LaFave & Scott, Substantive Criminal Law, *Parties to Crime,* § 6.6(d)(2) (1986 & 1999 Supp.). It is as appropriate for this Court to eliminate the charging requirement as it was to abolish the requirement that the principal must be tried before the accessory before the fact.

It is well-settled that, while a court should afford due respect to the important doctrine of *stare decisis,* that doctrine "is not to be construed as preventing us from changing a rule of law if we are convinced that the rule has become unsound in the circumstances of modern life." *White v. King,* 244 Md. 348, 354, 223 A.2d 763 (1966); *Hearst Corp. v. State Dept. of A. & T.,* 269 Md. 625, 643–644, 308 A.2d 679, 689 (1973). We have repeatedly recognized and stated that "[t]his Court has manifested a willingness to change common law rules which have 'become unsound in the circumstances of modern life.'" *Jones v. State,* 302 Md. 153, 161, 486 A.2d 184, 188 (1985) (quoting *Lewis,* 285 Md. at 715, 404 A.2d at 1079); *Boblitz v. Boblitz,* 296 Md. 242, 273, 462 A.2d 506, 521 (1983); *Moxley v. Acker,* 294 Md. 47, 52, 447 A.2d 857, 859–60 (1982); *Williams v. State,* 292 Md. 201, 217, 438 A.2d 1301, 1309 (1981); *Pope v. State,* 284 Md. 309, 342, 396 A.2d 1054, 1073 (1979). As Judge Eldridge noted, again, in *Lewis,* 285 Md. at

---

**3.** Professors Perkins and Boyce cite *Agresti v. State,* 2 Md.App. 278, 234 A.2d 284 (1967), as an example of the application of the common law rule that one charged only as an accessory could not be convicted if the evidence established that he was instead a principal. Perkins & Boyce, Criminal Law, *Parties to Crime* at 754 n. 77 and accompanying text (3d ed.1982). They note that as a result, it was possible for an accomplice to avoid conviction altogether because of uncertainty as to whether he had been present at the time the offense was committed by the principal. *Id.* at 754–55.

715, 404 A.2d at 1078, the common law is not static, is subject to change, and adapts itself to changing conditions and increasing knowledge. And finally, as Justice Holmes stated, as to *stare decisis:*

> It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

Holmes, *The Path of the Law,* 10 HARV. L.REV. 457, 469 (1897).

The majority points to the recent code revision of Burglary and the Legislative election "to continue to allow the law of accessoryship to be controlled by the common law with its enactment of Chapter 712." Maj. op. at 725. The Committee to Revise Article 27—Crimes and Punishments of the Annotated Code of Maryland conducts a piecemeal revision of the criminal code, and in the recent Burglary revision, the retention of the law of accessoryship should not be read as legislative approval for the common law of accessoryship. The committee addressed the substance of the crime, and likely did not find it appropriate to eliminate the pleading requirement for an accessory before the fact for simply one crime.

The common law rules as to accomplices and the procedural pleading requirements have, as Judge Levine observed, "injected a most undesirable hyper-technicality into the law of accomplice responsibility, which not infrequently operates to thwart justice and reduce judicial efficiency." *Williamson,* 282 Md. at 113, 382 A.2d at 595. In that the only justification for retaining the distinction between accomplice and principal is the "sheer antiquity of the doctrine," *id.* at 115, 382 A.2d at 596, this Court should obliterate the distinction. These procedural traps for the prosecution are, as Judge Lowe observed, as fundamentally unfair as it would be to have set them for the accused. No unfair prejudice will inure to the accused by the elimination of this distinction. *See Williamson,* 282 Md. at 114, 382 A.2d at 595–96. "The concept of fair play which we recognize as a basic tenet of Anglo–American jurisprudence is

not reserved solely for the accused. Society should share in it equally." *Williamson,* 36 Md.App. at 414, 374 A.2d at 915 (citation omitted).

While recognizing that Maryland is the only state which retains the common law rule as to accessoryship, the majority points out that in all the other states, the change was made by the legislature and not the courts. There are several responses to this argument. First, very few states, if any, have retained the criminal common law as has Maryland. Second, in *Hawkins, Ward, Lewis,* and *Jones,* in changing the law of accessoryship, this Court never looked to the manner in which the other states changed the common law.

The majority states that "the General Assembly's failure to amend or abrogate a common law rule sometimes reflects its desired public policy." Maj. op. at 723–24. I agree with that proposition. The principle must be read in context, however. In that this Court has recognized that the archaic common law rules as to accessoryship are obsolete, *see Jones,* 302 Md. at 158, 486 A.2d at 187, the majority surely cannot mean that letting a guilty defendant "off" on a technical pleading error such as we are discussing is reflective of the public policy of the State.

This Court should clean up its own cobwebs and abolish the distinction between principals and accessories.

WILNER, Judge, concurring:

Along with Judge Raker, I concur in the result reached by the majority. As is she, I am persuaded that the remaining distinction in the Maryland common law between principals and accessories is an anachronism that serves no useful purpose and ought to be abolished. It is a common law rule that is fully within our power to change. Judge Cathell's research discloses, however, that, notwithstanding its common law status, in all of the other States where the rule has been changed, the change has been made by the State Legislature, and that does give me some pause. That the distinction has not been abolished by the Maryland General Assembly may well be

explained, as Judge Lowe, a former Speaker of the House of Delegates, noted in *Williamson v. State,* 36 Md.App. 405, 414, 374 A.2d 909, 914 (1977) (Lowe, J., dissenting), not by any policy opposition to a change, but simply by the fact that the Legislature simply is "too occupied with matters of state to clean up the jurisprudential cobwebs we have accumulated." *Id.* I am not aware that the General Assembly, in recent times, has been asked to make the change.

I would urge the Article 27 Committee, created by the General Assembly for the purpose of making appropriate recommendations for substantive changes to the Criminal Code, to consider this matter and to make a recommendation to the next (2000) session of the Legislature, so that it will have the matter squarely before it. We can then see if it feels as we do—that this distinction ought to be repealed—and we can be guided accordingly.