767 A.2d 844

**Antoine Markee MITCHELL,**

v.

**STATE of Maryland.**

**No. 66, Sept. Term, 2000.**

Court of Appeals of Maryland.

March 5, 2001.

Peter F. Rose, Assistant Public Defender (Stephen E. Harris, Public Defender, and Mark Colvin, Assistant Public Defender, on brief), Baltimore, for petitioner.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

WILNER, Judge.

Petitioner was convicted in the Circuit Court for Prince George's County of a number of offenses, including conspiracy to commit second degree murder. The question before us is whether that is a crime in Maryland. The Court of Special Appeals held that it was. *Mitchell v. State*, 132 Md.App. 312, 752 A.2d 653 (2000). In the context of this case, we disagree.

## BACKGROUND

Petitioner's convictions arose from a shooting that occurred on September 5, 1997. During that morning, the victim, Eddy Arias, received three pages on his pager and, in response to each, left his apartment to use the telephone, as there was no telephone in the apartment. As he reentered his apartment

building after responding to the third page, he was attacked by two men at the bottom of the internal stairway, each armed with a handgun and each with a stocking mask over his face. Mr. Arias managed to break free and began to run up the stairs to his apartment, when he was shot in the back by one of the men. For purposes of this appeal, we take as a given that petitioner was one of the two men but that it was the other one, Gregory Ellis, who fired the shot. The State's theory was that the assailants' intent was to kill Mr. Arias and not simply to rob him.

Petitioner was charged in a multi-count indictment with a variety of offenses, including a count that was treated as charging conspiracy to commit first degree murder and one that more clearly charged conspiracy to commit second degree murder.[1] At the end of the State's case, a judgment of acquittal was entered on the counts charging attempted first degree murder, conspiracy to commit first degree murder, and possession of a firearm by a convicted felon. Petitioner was convicted, however, of attempted second degree murder, first degree assault, conspiracy to commit second degree murder, conspiracy to commit first degree assault, and use of a handgun in the commission of a felony. Several of the convictions, among them the two for conspiracy, were merged, but petitioner was sentenced to a total of 46 years in prison, including 13 years for conspiracy to commit second degree murder.

Notwithstanding his failure to mount any jurisdictional challenge in the trial court to the count charging conspiracy to

---

1. Count 6 charged, in relevant part, that petitioner "did conspire with Gregory Ellis, to feloniously, willfully and of deliberately premedicated [*sic* ] malice aforethought, kill and murder Eddy Arias, in violation of the **Common Law** of Maryland ... **(Conspire to commit murder)."** The court obviously treated the word "premedicated" as if it read "premeditated" and, notwithstanding the absence of any specific reference to first degree murder, regarded that count as charging conspiracy to commit first degree murder. In contrast, count 7 charged that petitioner "did conspire with Gregory Ellis, to feloniously with malice aforethought, kill and murder Eddy Arias in violation of the **Common Law** of Maryland ... **(Conspiracy to commit second degree murder)."** Count 7 was treated as charging conspiracy to commit second degree murder.

commit second degree murder or to object to the court's instruction to the jury on that count, petitioner claimed in the Court of Special Appeals that there was no such crime in Maryland. He argued there, as he argues here, that establishment of a conspiracy to commit murder necessarily establishes the element of premeditation that would make any murder emanating from the conspiracy first degree murder. It is not legally possible, he claims, for a person to conspire to commit a non-premeditated murder.

Regarding the argument as effectively challenging the jurisdiction of the trial court to render a judgment on the count, the Court of Special Appeals determined that it was one that could be raised initially on appeal and therefore addressed it. *See Williams v. State,* 302 Md. 787, 791–92, 490 A.2d 1277, 1279 (1985); *Lane v. State,* 348 Md. 272, 278, 703 A.2d 180, 183 (1997). The court found no merit in the argument, however, notwithstanding its view that the argument was "appealing on the surface" and "superficially seductive." *Mitchell, supra,* 132 Md.App. at 338, 353, 752 A.2d at 667, 676. Rather, the court concluded that it was legally and factually possible for a person to conspire to commit an unpremeditated murder. Its theory was that an agreement to kill a person could be arrived at "virtually instantaneously with the commission (or attempt) of that crime" and thus, *despite* its spontaneity, suffice to constitute a conspiracy but, *because* of its spontaneity, not suffice to constitute premeditation. *Id.* at 354, 752 A.2d at 676. Accordingly, in that circumstance (and perhaps in others that the court indicated might exist but did not attempt to define), it was legally possible to conspire to commit a non-premeditated second degree murder. *Id.* On that premise, and relying on decisions to that effect in *United States v. Croft,* 124 F.3d 1109 (9th Cir.1997) and *United States v. Chagra,* 807 F.2d 398 (5th Cir.1986), *cert. denied,* 484 U.S. 832, 108 S.Ct. 106, 98 L.Ed.2d 66 (1987), it affirmed the challenged conviction.

## DISCUSSION

There appear to be four approaches or lines of authority regarding the point in contention. One line, represented by

the two Federal cases cited by the Court of Special Appeals, holds that it is, indeed, possible to conspire to commit second degree, non-premeditated, murder. A second line, emanating from California and Michigan, holds to the contrary, that the agreement constituting the conspiracy necessarily establishes premeditation and thus, as a matter of law, would elevate any resulting murder to first degree. A third line consists of cases in which defendants have, in fact, been convicted of conspiracy to commit second degree murder but in which the issue of whether that constitutes a crime was either not raised or, if raised, was not addressed. Finally, there are a few States in which the crime has been found to exist by statute. We shall explore each of these approaches, but shall end, as we must, with an analysis of underlying Maryland law.

### The Fifth and Ninth Circuit Approach

In *United States v. Chagra, supra,* 807 F.2d 398, the defendant, along with others, was charged with conspiracy to murder a Federal judge, in violation of 18 U.S.C. §§ 1111 (murder), 1114 (killing a Federal officer or employee), and 1117 (conspiracy to murder). Initially, the charge was conspiracy to commit first degree murder, of which she was convicted. When that conviction was overturned on appeal because of faulty jury instructions dealing with premeditation, a superseding indictment was filed charging Chagra with conspiracy to commit second degree murder. Upon her conviction of that charge, she contended on appeal that no such crime existed because second degree murder is necessarily an unplanned murder, devoid of premeditation, and one cannot plan an unplanned event. Like petitioner here, she argued that the agreement necessary to a conspiracy and premeditation were "sufficiently the same that one cannot exist without the other." *Id.* at 401. That argument, the court held, was based on the incorrect assumption that, to constitute a conspiracy to commit first degree murder, the agreement itself must be premeditated, which was not the case.

What is required, the court said, is that the defendant agree with another to commit an illegal objective and that, at the

time of the agreement, the defendant also have the state of mind required to commit the substantive crime. Although those two states of mind "are almost always one, or tend to collapse into one," the inquiries must be made separately. *Id.* The Government was entitled to prove that, at the moment of conspiratorial agreement, Chagra's intent to kill the judge "was impulsive and with malice aforethought." *Id.* An impulsive killing, it continued, nonetheless constitutes the intentional taking of life and, when coupled with malice aforethought, is second degree murder. In that setting, "the element of agreement and the requisite intent to commit the substantive offense were in harmony" and were not "mutually exclusive requirements of proof." *Id.* The court rejected the argument that one cannot plan an unplanned event by rejecting what it regarded as the underpinning of the argument—that one cannot possess the intent to kill impulsively at some future time. The focus of conspiracy, it said, was on the agreement and the defendant's intent at the time of the agreement, and, in that regard, the court observed that the state of mind "can certainly be to impulsively kill such as, 'yes! let's kill the judge.' " *Id.* at 402.

The view of the *Chagra* court was accepted, without discussion, in *United States v. Croft, supra,* 124 F.3d 1109. The defendants, charged with conspiracy to murder the U.S. Attorney, in violation of 18 U.S.C. §§ 1111, 1114, and 1117, complained on appeal that the instructions to the jury omitted the element of premeditation. The court noted that § 1111(a) included both first and second degree murder, that the indictment did not allege premeditation, that it therefore charged only conspiracy to commit second degree murder, and, citing *Chagra,* that "it is logically possible to conspire to commit second degree murder." *Id.* at 1122–23. The Ninth Circuit court did not discuss any rationale for that view but, we presume, tacitly accepted the reasoning of the *Chagra* court.

So far as we can tell, *Chagra* and *Croft* are the only two currently viable cases actually holding, after some consideration of the issue, that conspiracy to commit second degree murder constitutes a common law crime. There are two other

cases, however, that bear mention in this regard. In *State v. Arnold*, 98 N.C.App. 518, 392 S.E.2d 140 (1990), the defendant was convicted of second degree murder, as an accessory before the fact, and conspiracy to commit *first* degree murder. On appeal she argued that the conspiracy charge should have been dismissed "since it is legally impossible to conspire to commit second degree murder." *Id.* at 150. Despite that articulation of the complaint, however, the issue actually framed was not the one now before us, but seemed to be based more on an asserted inconsistency between the conspiracy charge, alleging an agreement to commit first degree murder, and the actual murder conviction, which was for second degree. The court concluded that, as the conspiracy occurs when the agreement is made, it is not affected by the degree of the substantive crime actually committed, and that the verdicts were therefore not inconsistent. Implicitly, and quite correctly, the court necessarily concluded that it was legally possible for one to conspire to commit first degree murder even though the crime actually committed amounts only to second degree murder. *See also State v. Leonardo*, 119 R.I. 7, 375 A.2d 1388 (1977), to the same effect.

### California and Michigan

As we indicated, California and Michigan have espoused a very different view than the *Chagra* and *Croft* courts. The California approach evolved through four cases. In *People v. Kynette*, 15 Cal.2d 731, 104 P.2d 794 (1940), the court concluded that "a conspiracy to commit murder can only be a conspiracy to commit murder of the first degree for the obvious reason that the agreement to murder necessarily involves the 'willful, deliberate and premeditated' intention to kill a human being" and that "[a] murder committed in pursuance of such an agreement would unquestionably be a 'willful, deliberate and premeditated' murder of the first degree...." *Id.* at 801. In part, that conclusion was based on a statute in effect at the time (Cal.Pen.Code, § 182) that made conspiracy punishable in the same manner and to the same extent that the code provided for commission of the target felony.

In 1955, § 182 was amended to provide that, (1) if the felony was one for which different punishments were prescribed for different degrees, the jury or court must determine the degree of the felony the defendant conspired to commit, and (2) if the degree was not determined, the punishment for conspiracy was to be that prescribed for the lesser degree, except that, in the case of conspiracy to commit murder, the punishment was to be that prescribed for murder in the first degree. In *People v. Horn*, 12 Cal.3d 290, 115 Cal.Rptr. 516, 524 P.2d 1300 (1974), the court, in *dicta*, considered the effect of the statutory change, and, in so doing, determined that a conspiracy could take the form of conspiracy to commit first or second degree murder or manslaughter.[2] That conclusion was based on three factors: the then-existing availability of a diminished capacity defense, the then-existing requirement that, to establish premeditation, the State must show that the defendant could "maturely and meaningfully reflect upon the gravity of his contemplated act," and the change to § 182. *Id.* at 1305–06.

The conclusion in *Horn* was largely disavowed in *People v. Swain*, 12 Cal.4th 593, 49 Cal.Rptr.2d 390, 909 P.2d 994 (1996). Under California law, second degree murder could arise in three settings: (1) unpremeditated murder with express malice—*i.e.*, an unlawful killing with malice aforethought but without deliberation and premeditation; (2) murder based on implied malice, where there may have been no intent to kill but the killing results from an intentional act, the consequences of which are dangerous to human life, performed with knowledge of the danger and with conscious disregard for human life; and (3) second degree felony murder, *i.e.*, a killing, whether intended or not, occurring during and as a

---

**2.** The conclusion regarding conspiracy to commit second degree murder was regarded as *dicta* because the actual holding in *Horn* was that the trial court erred, in light of the evidence of intoxication, in failing to instruct that the conspiracy could have been to commit manslaughter. *See People v. Cortez*, 18 Cal.4th 1223, 77 Cal.Rptr.2d 733, 960 P.2d 537, 543 (1998), holding that the discussion in *Horn* regarding § 182 was *dicta*.

result of the commission or attempted commission of certain crimes. The principal issue in *Swain* was whether it was possible to conspire to commit second degree murder based on implied malice—the second of the three circumstances—and the court held that such a possibility did not exist.

Conspiracy, the court began, is a specific intent crime, requiring two kinds of intent—an intent to agree or conspire and a further intent to commit the target crime. No problem arises with respect to express malice murder, as the intent to kill requirement for the conspiracy and the intent to kill requirement for that form of murder were the same: "Simply put, where the conspirators agree or conspire with specific intent to kill ... they are guilty of conspiracy to commit express malice murder." *Id.* at 998. Implied malice murder, however, does not require an intent to kill; the malice is implied from the intent to do some other act dangerous to life, coupled with the fact that a killing has resulted from the commission of that act. It is precisely due to this nature of *implied malice* murder, the court held, that "it would be *illogical* to conclude one can be found guilty of conspiring to commit murder where the requisite element of malice is implied." *Id.* at 999. Thus, the court held, "a conviction of conspiracy to commit murder requires a finding of intent to kill, and cannot be based on a theory of implied malice." *Id.* at 1001.

That conclusion led to a reversal of Swain's conviction, as the trial court had instructed on theories of both express and implied malice and the jury had returned a general verdict. The court noted, however, the difficult question of whether there exists a viable offense of conspiracy to commit express malice second degree murder. It was in that regard that the *Swain* court disavowed the conclusions reached in *Horn,* on the grounds that (1) the California legislature had, by statute, eliminated both the diminished capacity defense and the condition of premeditation that the defendant maturely and meaningfully reflect on the gravity of his or her act, and (2) the *Horn* court had misconstrued the legislative change to § 182. Although it declined to reach the issue, as being premature in

the circumstance, the court noted that, with those statutory changes, the situation appeared to have returned to what it had been when *Kynette* was decided and that "conspiring to murder with the requisite intent to kill is arguably functionally indistinguishable from the mental state of premeditating the target offense of murder." *Id.* at 1002–03. If that were so, then logically all conspiracy to commit murder is necessarily conspiracy to commit first degree murder.

That open question was resolved in *People v. Cortez, supra,* 18 Cal.4th 1223, 77 Cal.Rptr.2d 733, 960 P.2d 537, where the court held that "all conspiracy to commit murder 'is necessarily "conspiracy to commit [premeditated] first degree murder." ' " *Id.* 77 Cal.Rptr.2d 733, 960 P.2d at 538. Tracking much of what it had said in *Swain,* the court noted that the process of premeditation and deliberation "does not require any extended period of time." *Id.* 77 Cal.Rptr.2d 733, 960 P.2d at 542. The test is "not the duration of time as much as it is the extent of the reflection," and thus, "[t]houghts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." *Id.* (quoting *People v. Thomas,* 25 Cal.2d 880, 156 P.2d 7, 18 (1945)). The court confirmed that "where two or more persons conspire to commit murder—i.e., intend to agree to conspire, further intend to commit the target offense of murder … each has acted with a state of mind 'functionally indistinguishable from the mental state of premeditating the target offense of murder' " and that "the mental state required for conviction of *conspiracy* to commit murder necessarily establishes premeditation and deliberation of the target offense of murder—hence all murder conspiracies are conspiracies to commit first degree murder, so to speak." *Id.* 77 Cal.Rptr.2d 733, 960 P.2d at 542 (quoting, in part, from *Swain, supra,* 49 Cal.Rptr.2d 390, 909 P.2d at 1002–03). Specifically overruling any contrary holdings in *Horn,* the court expressly held that "all conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder." *Id.* 77 Cal.Rptr.2d 733, 960 P.2d at 546.

The intermediate appellate court of Michigan has reached the same conclusion, for essentially the same reason. *See People v. Hammond,* 187 Mich.App. 105, 466 N.W.2d 335 (1991). It too began with the facts that (1) conspiracy is a specific intent crime, the gist being "the specific, mutual agreement to perform the crime in question," and (2) "second-degree murder is distinguishable from first-degree murder in that it does not require premeditation and in fact may not require a specific intent to kill." *Id.* at 337. Citing *People v. Hamp,* 110 Mich.App. 92, 312 N.W.2d 175 (1981), the court concluded that, as prior planning and agreement were necessary elements of conspiracy, it is analytically consistent to plan to commit first degree murder "but logically inconsistent to 'plan' to commit second-degree murder." *Hammond, supra,* 466 N.W.2d at 337. Prior planning, the court noted, denotes premeditation and deliberation. Accordingly, continuing to quote, in part, from *Hamp:*

" 'The elements of conspiracy, conversely, are incompatible and inconsistent with second-degree murder. One does not "plan" to commit an "unplanned" substantive crime. It is not "absence" of the elements but the "inconsistency" of the elements which lead [sic] us to conclude that one conspires to commit first-degree murder but not second-degree murder.' Because of this logical inconsistency, we conclude as a matter of law that there is no crime of conspiracy to commit second-degree murder."

*Id.* at 337.

### Other Approaches

Representing a third line of authority are cases in which persons have, in fact, been convicted of conspiracy to commit second degree murder, but in which the issue of whether such a crime exists was either not raised or, if raised, was not considered. *See, for example, State v. Barrett,* 132 Ariz. 106, 644 P.2d 260 (App.1981), *modified,* 132 Ariz. 88, 644 P.2d 242 (1982), *overruled in part, State v. Burge,* 167 Ariz. 25, 804 P.2d 754 (1990) (issue not raised); *People v. LaPlant,* 670 P.2d 802 (Colo.App.1983) (issue raised but not addressed because not

raised at trial); *Connelly v. State,* 704 So.2d 590 (Fla.App. 1997) (issue not raised); *Powlowski v. State,* 467 So.2d 334 (Fla.App.1985); *State v. Tatum,* 618 So.2d 1164 (La.App.1993) (guilty plea); *State v. Bridges,* 480 So.2d 926 (La.App.1985) (guilty plea); *People v. Arroyo,* 93 N.Y.2d 990, 695 N.Y.S.2d 537, 717 N.E.2d 696 (1999) (issue not raised); *In re Estate of Gibbs,* 490 N.W.2d 504 (S.D.1992) (guilty plea); *State v. Klump,* 80 Wash.App. 391, 909 P.2d 317 (1996) (guilty plea); *Rude v. State,* 851 P.2d 20 (Wyo.1993) (plea of *nolo contendere* ). The most that can be said for this third line of cases is that it constitutes a tacit and uncritical recognition that the crime exists.

The fourth line of cases are those in which the crime of conspiracy to commit second degree murder has been assumed to exist by statute. In none of those cases was the issue before us considered. *See, for example, Com. v. Fortune,* 305 Pa.Super. 441, 451 A.2d 729 (1982); *People v. Arroyo, supra,* 93 N.Y.2d 990, 695 N.Y.S.2d 537, 717 N.E.2d 696; *State v. Kaakimaka,* 84 Hawai'i 280, 933 P.2d 617 (1997). Those cases are of no assistance in a common law analysis. *See also* 705 Ill. Comp. Stat. §§ 405/1–2, 405/2–13, and 405/2–13.1, making reference to the crime of conspiracy to commit second degree murder.

### *Maryland Law*

The choice, therefore, is whether to adopt the *Chagra/Croft* approach or that of California and Michigan. Both this Court and, in earlier cases, the Court of Special Appeals, have effectively made that choice, adopting the California/Michigan approach and holding that conspiracy to commit murder necessarily constitutes conspiracy to commit first degree murder, but we have done so in almost *ex cathedra* fashion, without analysis.

The Court of Special Appeals first reached that conclusion 20 years ago in *Wise v. State,* 47 Md.App. 656, 670, 425 A.2d 652, 660, *cert. denied,* 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981), and *Bell v. State,* 48 Md.App. 669, 680, 429 A.2d 300, 306 (1981). In *Wise,* the issue was one of collateral

estoppel—whether a previous acquittal for conspiracy to murder X precluded, in a subsequent trial for the murder of X, hearsay evidence of the efforts made to hire the defendant to perform the killing. It was in that context that the court, without citation to any authority, stated that "[a]lthough all conspiracies must presuppose elements of premeditation and deliberation," the converse was not true. *Wise,* 47 Md.App. at 670, 425 A.2d at 660. In *Bell,* the defendant was sentenced to life imprisonment for conspiracy to murder her husband based on the judge's finding that the murder she conspired to commit was first degree murder. On appeal, Bell complained that, because the issue of premeditation had not been submitted to the jury, it was improper for the judge to draw that inference and make that finding. In rejecting that argument, the court, citing *Wise,* held that "[i]f one conspires to murder, however, the conspiracy itself is the premeditating factor raising the underlying crime from a second to a first degree offense." *Bell,* 48 Md.App. at 680, 429 A.2d at 306.[3]

In *Gary v. State,* 341 Md. 513, 671 A.2d 495 (1996), the defendant was convicted of conspiracy to commit first degree murder, for which he was sentenced to life imprisonment. His complaint on appeal was that the sentence exceeded the statutory maximum. We rejected that complaint, but, in a footnote to our statement that he had been convicted of conspiracy to commit first degree murder, we observed:

> "Where, as in the instant case, the object of a conspiracy is to kill, the appropriate charge may be conspiracy to commit first degree murder. *See Bell v. State,* 48 Md.App. 669, 680, 429 A.2d 300, 306 (1981) ('If one conspires to murder ... the conspiracy itself is the premeditating factor raising the underlying crime from a second to a first degree offense')."

*Id.* at 517 n. 2, 671 A.2d 495.

In this case, the Court of Special Appeals attempted to distinguish *Wise* and *Bell* and held that, by using the word

---

3. The *Bell* court also cited *State v. Williamson,* 282 Md. 100, 101, 382 A.2d 588 (1978) as authority. We are unable to find anything in *Williamson* supporting that statement.

"may" in our footnote in *Gary,* we left open the prospect of "may not." Although we think that is a strained and unpersuasive reading of our footnote, it is important that we give a reasoned basis for our conclusion. ·

 In Maryland, conspiracy remains a common law crime. *Johnson v. State,* 362 Md. 525, 766 A.2d 93 (2001). We have described the offense as follows:

"A criminal conspiracy consists of the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The essence of a criminal conspiracy is an unlawful agreement. The agreement need not be formal or spoken, provided there is a meeting of the minds reflecting a unity of purpose and design. In Maryland, the crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown."

*See Townes v. State,* 314 Md. 71, 75, 548 A.2d 832, 834 (1988); *Apostoledes v. State,* 323 Md. 456, 461–62, 593 A.2d 1117, 1120 (1991); *Campbell v. State,* 325 Md. 488, 495–96, 601 A.2d 667, 670 (1992).[4]

 Although a conspiracy may be shown by circumstantial evidence, from which a common design may be inferred, *Seidman v. State,* 230 Md. 305, 322, 187 A.2d 109, 119 (1962), *cert. denied,* 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963), the requirement that there must be a meeting of the minds—a unity of purpose and design—means that the parties to a conspiracy, at the very least, must (1) have given sufficient thought to the matter, however briefly or even impulsively, to be able mentally to appreciate or articulate the object of the conspiracy—the objective to be achieved or the act to be committed, and (2) whether informed by words or by gesture,

---

4. With this formulation, Maryland law differs in at least two respects from the law in the Federal system and in some other States, in that (1) it is not expressly limited to an agreement to commit a criminal act, and (2) no overt act in furtherance of the agreement is necessary for the crime to be complete. *See Williams v. State,* 329 Md. 1, 616 A.2d 1275 (1992); *Townes, supra,* 314 Md. 71, 548 A.2d 832.

understand that another person also has achieved that concep-
tualization and agrees to cooperate in the achievement of that
objective or the commission of that act. Absent that minimum
level of understanding, there cannot be the required unity of
purpose and design. As other courts have consistently held,
therefore, conspiracy is necessarily a specific intent crime;
there must exist the specific intent to join with another person
in the accomplishment of an unlawful purpose or a lawful
purpose by unlawful means.

■ When the object of the conspiracy is the commission of
another crime, as in conspiracy to commit murder, the specific
intent required for the conspiracy is not only the intent
required for the agreement but also, pursuant to that agree-
ment, the intent to assist in some way in causing that crime to
be committed. That conclusion is compelled not only by force
of logic but is implicit from the two statutes that deal with the
general crime of conspiracy—Article 27, § 40 which makes an
indictment for conspiracy sufficient if it alleges that the defen-
dants unlawfully conspired together "to murder X–Y (or other
conspiracy here stating briefly the object of the conspiracy)
. . ." and Article 27, § 38, which limits the punishment for a
criminal conspiracy to the maximum punishment allowed "for
the offense [the defendant] conspired to commit." Although
the gravamen of the crime of conspiracy is the unlawful
agreement, the second phase of the specific intent required is
adjunctive to the criminal objective, whether or not that
objective is ever achieved. Thus, if the conspiracy is to
commit murder, the intent must be to commit (or have some-
one commit) those acts that would constitute murder.

Under Maryland law, murder remains a common law crime
that, by statute, has been divided into two degrees. *Hook v.
State,* 315 Md. 25, 553 A.2d 233 (1989); *Bruce v. State,* 317
Md. 642, 566 A.2d 103 (1989); *Burch v. State,* 346 Md. 253, 696
A.2d 443, *cert. denied,* 522 U.S. 1001, 118 S.Ct. 571, 139
L.Ed.2d 410 (1997). Sections 407 through 410 of Article 27
make certain specified kinds of murder in the first degree—
murder perpetrated by means of poison, lying in wait, "or by

any kind of wilful, deliberate and premeditated killing" (§ 407), murder committed in the perpetration or attempt to perpetrate arson in the first degree (§ 408), murder committed in the burning or attempt to burn certain agricultural buildings (§ 409), and murder committed in the perpetration or attempt to perpetrate certain other specified felonies (§ 410). Section 411 makes "all other kinds of murder" murder in the second degree.

Although second degree murder, as characterized by § 411, is a broad class—"all other kinds of murder"—we have defined it more precisely as embracing four kinds of murder. In *Burch, supra,* 346 Md. 253, 274, 696 A.2d 443, 454, we observed, as of 1997, when *Burch* was decided, that second degree murder embraced a killing accompanied by any of at least three alternative states of mind (*mentes reae* ):

> "killing another person (other than by poison or lying in wait) with the intent to kill, but without the deliberation and premeditation required for first degree murder; killing another person with the intent to inflict such serious bodily harm that death would be the likely result; and what has become known as depraved heart murder—a killing resulting from 'the deliberate perpetration of a knowingly dangerous act with reckless and wanton unconcern and indifference as to whether anyone is harmed or not.' "

*Id.* (quoting in part from *Robinson v. State,* 307 Md. 738, 744, 517 A.2d 94, 97 (1986), quoting, in turn, from *DeBettencourt v. State,* 48 Md.App. 522, 530, 428 A.2d 479, 484 (1981)).

We left open in *Burch* whether there was a fourth category of second degree murder—murder committed in the perpetration of a felony other than one specified in § 410. That issue is presently pending before this Court in *Fisher and Utley v. State* (Sept. Term 1999, No. 113) and *Deese v. State* (Sept. Term 1999, No. 138).

The charge at issue here, articulated in Count 7 of the indictment, was of the first variety of second degree murder. The conspiracy alleged was the agreement actually to kill Mr. Arias, other than by poison or lying in wait, with the intent to

kill, but without the deliberation and premeditation required of first degree murder. As noted, it charged petitioner with conspiring with Ellis, with malice aforethought, to kill and murder Mr. Arias. There was no allegation that the conspiracy was merely to inflict such grievous bodily injury that death would be the likely result, to commit a dangerous act with wanton disregard of whether death would be the likely result, or to commit a felony not included in § 410. We need not determine, therefore, whether a conspiracy to commit any of those forms of second degree murder constitutes a crime, but deal here only with whether it is unlawful to conspire to commit the first form of second degree murder.

The element that distinguishes this form of second degree murder from first degree murder is that of deliberation and premeditation. For murder "to be 'deliberate' there must be a full and conscious knowledge of the purpose to kill; and to be 'premeditated' the design to kill must have preceded the killing by an appreciable length of time, that is, time enough to be deliberate." *Tichnell v. State*, 287 Md. 695, 717, 415 A.2d 830, 842 (1980). We added in *Tichnell*, however, that "[i]t is unnecessary that the deliberation or premeditation shall have existed for any particular length of time." *Id.* at 717–18, 415 A.2d at 842. "Appreciable length of time" simply means "any amount of time sufficient to convince the trier of fact that the purpose to kill was not 'the immediate offspring of rashness and impetuous temper,' but was the product of a mind 'fully conscious of its own design.' " *Willey v. State*, 328 Md. 126, 133, 613 A.2d 956, 959 (1992). Quoting from *Colvin v. State*, 299 Md. 88, 108, 472 A.2d 953, 963, *cert. denied*, 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984), we confirmed in *Willey* that "[i]f the killing results from a *choice made as the result of thought, however short the struggle between the intention and the act*, it is sufficient to characterize the crime as deliberate and premeditated murder." *Willey, supra*, 328 Md. at 133, 613 A.2d at 959. Indeed, a delay between firing a first and second shot "is enough time for reflection and decision to justify a finding of premeditation." *Hunt v. State*, 345 Md. 122, 161, 691 A.2d 1255, 1274, *cert. denied*, 521 U.S.

1131, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997) and cases cited therein.

■ When we examine these concepts together, it becomes clear that the kind of awareness and reflection necessary to achieve the unity of purpose and design for a conspiracy is essentially the same as that required for deliberation and premeditation. We think that the California court in *Cortez* and the Michigan court in *Hammond* were entirely correct in their analysis—that where the charge is made and the evidence shows that the defendant conspired to kill another person unlawfully and with malice aforethought, the conspiracy is necessarily one to commit murder in the first degree (even if a murder pursuant to the conspiracy never occurs or, for whatever reason, amounts to a second degree murder), as the agreement itself, for purposes of the conspiracy, would supply the necessary deliberation and premeditation. We are unable to follow the metaphysical analysis of *Chagra* or the intermediate appellate court in this case, that spontaneity or acting on impulse can, at the same time, suffice to establish an agreement to murder but not suffice to constitute the deliberation and premeditation that distinguishes first from this form of second degree murder, as we have defined those concepts. That kind of inconsistency would either broaden the crime of conspiracy, by eroding the specific intent necessary for that crime, or create greater uncertainty in the meaning of deliberation and premeditation.

■ The problem may be in confusing the nature and effect of impulse. Although it is true that a murder committed solely on impulse—the "immediate offspring of rashness and impetuous temper"—is not one committed with deliberation and premeditation, the law does not require that deliberation and premeditation be the product of clear and rational thought; it may well result from anger or impulse. The test for first degree murder is whether there was the deliberation and premeditation—sufficient time to reflect—not the quality or rationality of the reflection or whether it may have been emotionally based.

For these reasons, we shall reverse the judgment of the Court of Special Appeals. Conspiracy to commit this form of second degree murder is not a crime in Maryland.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT ENTERED ON COUNT 7 OF THE INDICTMENT AND REMAND FOR FURTHER PROCEEDINGS WITH RESPECT TO COUNT 8 (CONSPIRACY TO COMMIT FIRST DEGREE ASSAULT) THAT WAS MERGED INTO THE CONVICTION ON COUNT 7; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.