*Roger Garcia v. State of Maryland*, No. 2355, September Term, 2019.  Opinion by Zic, J.

**FIRST-DEGREE PREMEDITATED MURDER — SECOND-DEGREE INTENT-TO-KILL MURDER — ACCESSORIES BEFORE THE FACT — DELIBERATION AND PREMEDITATION**

Second-degree intent-to-kill murder based on accessory-before-the-fact accomplice liability is a legally viable theory of murder.  An accessory before the fact who personally harbors the intent to kill can aid in the perpetration of a killing without the awareness and reflection necessary to justify a finding of deliberation and premeditation as is required for first-degree premeditated murder.  Such an accomplice could be guilty of second-degree murder of the intent-to-kill variety.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2355

September Term, 2019

ROGER GARCIA

v.

STATE OF MARYLAND

Berger,
Gould,*
Zic,

JJ.

Opinion by Zic, J.

Filed: November 3, 2021

* Judge Steven B. Gould, now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of the Court of Special Appeals; he participated in the adoption of an unreported version of this opinion as a specially assigned member of this Court. The unreported opinion was filed on October 1, 2021.

On October 26, 2021, this Court approved this opinion for reporting. Judge Gould played no part in this Court's consideration or approval of the opinion for reporting.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this criminal appeal, Roger Garcia, appellant, challenges the viability of a theory of murder: second-degree intent-to-kill murder based on accessory-before-the-fact accomplice liability. Following a jury trial, Mr. Garcia was convicted in the Circuit Court for Montgomery County of two counts of second-degree murder and two corresponding use of a firearm counts. He was sentenced to a total of 100 years of incarceration. Mr. Garcia then filed this appeal.

## QUESTION PRESENTED

Mr. Garcia presents the following question for our consideration, which we have slightly rephrased[1]:

> Is second-degree intent-to-kill murder based on accessory-before-the-fact accomplice liability a legally viable theory of murder?

For the reasons that follow, we answer that question in the affirmative and affirm the judgments of the circuit court.

## BACKGROUND[2]

Mr. Garcia, along with three other individuals,[3] were each charged in the murder of Shadi Najjar and Artem Ziberov. More specifically, Mr. Garcia was charged by

---

[1] In his brief, Mr. Garcia phrases the issue as follows: "Whether Appellant's convictions of second degree murder and use of a firearm in the commission of a crime of violence must be vacated because they may have been based on a legally impossible theory of murder."

[2] We provide only a brief summary of the facts as a more detailed overview is not necessary to the resolution of the issue presented.

[3] The three other individuals are Jose Ovilson Canales-Yanez, Edgar Garcia-Gaona, and Rony Galicia. They were each convicted of murder in separate trials and are serving consecutive life without parole sentences. *See State v. Jose Ovilson Canales-Yanez*, No. 132902C (Md. Cir. Ct. Montgomery Cnty.); *State v. Edgar Garcia-Gaona*,

indictment with two counts of first-degree murder (Counts 1 and 2), conspiracy to commit murder (Count 3), four counts of use of a firearm in the commission of a felony or crime of violence (Counts 4-7), and armed robbery (Count 8). On December 4, 2019, a jury trial commenced in the Circuit Court for Montgomery County.

After the close of evidence, the circuit court instructed the jury on, among other offenses, first-degree premeditated murder, second-degree intent-to-kill murder, second-degree grievous bodily harm murder, and accomplice liability. When providing the jury instruction on accomplice liability, the court specifically noted that Mr. Garcia could be found guilty of first-degree murder, second-degree murder, and use of a firearm as an accomplice.

The State entered a *nolle prosequi* on Count 7 of the indictment on December 11, 2019. Subsequently, the jury rendered its verdict. Mr. Garcia was acquitted of both counts of first-degree premeditated murder and first-degree felony murder, conspiracy to commit murder, armed robbery, and the corresponding use of a firearm count. He was convicted of two counts of second-degree murder and the corresponding firearm counts. The verdict sheet did not specify the type of second-degree murder on which he was convicted.

On January 10, 2020, Mr. Garcia was sentenced to 30 years of incarceration for each murder count and 20 years for each corresponding firearm count, each to be served consecutively. This appeal followed.

No. 132903C (Md. Cir. Ct. Montgomery Cnty.); *State v. Rony Alexander Galicia*, No. 132904C (Md. Cir. Ct. Montgomery Cnty.).

**DISCUSSION**

Mr. Garcia argues that his murder sentences are illegal under Rule 4-345(a), which is discussed below, because the underlying convictions may have been based on a legally impossible theory of murder—second-degree intent-to-kill murder based on accessory-before-the-fact accomplice liability. More specifically, he argues that an accessory before the fact who personally harbors an intent to kill and provides aid before the killing is necessarily guilty of deliberation and premeditation and thus cannot be convicted of "second degree unpremeditated intent to kill murder." Rather, an "accessory before the fact to an intent to kill murder . . . is guilty of first degree premeditated murder." Consequently, Mr. Garcia claims that his murder convictions and the resulting sentences must be vacated because the jury was asked to consider this legally impossible theory of murder, even though the jury was also presented with legally viable theories. He similarly argues that the corresponding firearm convictions and the resulting sentences must be vacated as they are predicated on the invalid murder convictions. Mr. Garcia urges this Court to remand the case to the circuit court for a new trial "with instructions that second degree unpremeditated intent to kill murder based on accessory-before-the-fact accomplice liability is not a viable legal theory of murder and cannot be presented to or considered by the jury."

Conversely, the State argues that Mr. Garcia "has failed to show that his convictions and sentence rest on a legally impossible theory of the type . . . that the Court of Appeals held could be remedied without a contemporaneous objection at trial under Maryland Rule 4-345(a)." The State claims that Mr. Garcia's argument on appeal "is, at

3

best, an unpreserved and meritless claim of legally inconsistent verdicts." While we disagree with the State's characterization of Mr. Garcia's contention as a claim of verdict inconsistency, we do not believe that Mr. Garcia's convictions are based on a legally impossible theory of murder. We hold that second-degree murder of the intent-to-kill variety based on accessory-before-the-fact accomplice liability is a legally viable theory.

## I.  STANDARD OF REVIEW

This appeal presents a question of law. As such, we apply a de novo standard of review. *Shannon v. State*, 468 Md. 322, 335 (2020); *see also Schisler v. State*, 394 Md. 519, 535 (2006) (explaining that when the question presented on appeal "involves an interpretation and application of Maryland constitutional, statutory[,] or case law," the case is reviewed de novo).

## II.  PRESERVATION

As a threshold matter, we first turn to Mr. Garcia's assertion that even though the illegality of his sentences and underlying convictions for second-degree murder was not raised at trial, this Court can properly consider it for the first time on appeal pursuant to Rule 4-345(a). Under that Rule, "[t]he court may correct an illegal sentence at any time," even if no objection was made in the circuit court. Md. Rule 4-345(a); *see Bailey v. State*, 464 Md. 685, 696 (2019). An "illegal sentence" is defined as one "in which the illegality inheres in the sentence itself." *Chaney v. State*, 397 Md. 460, 466 (2007); *see Colvin v. State*, 450 Md. 718, 728 (2016) ("[W]e reaffirm the rule that only claims sounding in substantive law, not procedural law, may be raised through a Rule 4-345(a) motion.").

4

Maryland courts have stressed that the scope of Rule 4-345(a) is narrow and generally limited to circumstances where "there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed." *Rainey v. State*, 236 Md. App. 368, 381 (2018) (quoting *Colvin*, 450 Md. at 725). Additionally, an "illegal sentence" may arise when "the illegality of a sentence stems from the illegality of the conviction itself." *Johnson v. State*, 427 Md. 356, 378, 380 (2012) (holding that the imposition of a sentence for a crime with which the defendant was not charged is the type of sentence illegality that is cognizable under Rule 4-345(a)). Importantly, this type of illegality has been "limited to situations in which the illegality of the conviction exists because the trial court lacked the 'power or authority' to convict." *Rainey*, 236 Md. App. at 380-81 (quoting *Johnson*, 427 Md. at 371) (explaining that the Court's holding in *Johnson* that the defendant's sentence was illegal was based on the circuit court's lack of power or authority to impose a conviction for an uncharged offense).

Mr. Garcia claims that his sentences are illegal under Rule 4-345(a) "because they [may be] based on convictions of a legally impossible theory of murder." As support, he cites to *Fisher v. State*, 367 Md. 218 (2001), for the proposition that "a sentence is illegal if it is based on a conviction of a legally impossible crime or theory of a crime." In that case, three defendants were convicted of second-degree murder, more specifically felony murder as expressly indicated on the jury verdict sheets, child abuse, and conspiracy to commit child abuse. *Id.* at 226. They argued that Maryland law does not recognize the offense of second-degree felony murder predicated on the felony of child abuse. *Id.* at

5

225, 237. Although not raised in the trial court, the Court decided to reach the merits of the defendants' argument. *Id.* at 237-40. As one reason for that decision, the Court explained that their murder sentences would be illegal under Rule 4-345(a) if it was determined, as alleged by the defendants, that second-degree felony murder premised on the felony of child abuse was not a cognizable offense. *Id.* at 239-40. More specifically, it stated "that a sentence imposed under an entirely inapplicable statute 'is an illegal sentence which may be challenged at any time.'" *Id.* (quoting *Moosavi v. State*, 355 Md. 651, 662 (1999)). The Court then explained:

> [I]f the felony murder doctrine has no application to a homicide resulting from child abuse, then the thirty year sentences for murder in the second degree imposed on the petitioners would be similarly illegal, because, by the special jury verdict, the findings of guilty of murder were based solely on felony murder.

*Fisher*, 367 Md. at 240.

Unlike the murder convictions at issue in *Fisher*, which were indisputably based on the purported non-cognizable offense as indicated on the special verdict forms, Mr. Garcia's second-degree murder convictions were not necessarily based on the allegedly illegal theory of murder—second-degree intent-to-kill murder premised on accessory-before-the-fact accomplice liability. Mr. Garcia recognizes this in his brief when stating that "the jury . . . *could* have convicted [him] based on [the challenged murder] theory." (emphasis added). The guilty verdict could have rested on, for example, a finding that Mr. Garcia committed second-degree intent-to-kill murder as a principal, rather than an accessory, which is a legally valid offense. Nonetheless, we do not decide whether Mr.

6

Garcia has alleged an "illegal sentence" within the scope of Rule 4-345(a). Instead, we elect to address the merits of his challenge based on the discretion afforded to this Court under Rule 8-131(a) to consider unpreserved issues.

### III.  VIABILITY OF THE CHALLENGED MURDER THEORY

In Maryland, murder is "a common law crime that . . . has been divided into two degrees" by statute. *Mitchell v. State*, 363 Md. 130, 146 (2001); *see* Md. Code Ann., Crim. Law §§ 2-201, 2-204. First-degree murder encompasses, in pertinent part, "a deliberate, premeditated, and willful killing." Crim. Law § 2-201. Second-degree murder includes killings that are not in the first degree. Crim. Law § 2-204. Maryland courts have further defined second-degree murder as embracing four types of murder: (1) killing a person with the intent to kill; (2) killing a person with the intent to inflict such grievous bodily harm that death would likely result; (3) felony murder; and (4) depraved heart murder. *Alston v. State*, 414 Md. 92, 109 n.5 (2010).

To prove first-degree premeditated murder, the State must establish "that the defendant possess[ed] the intent to kill (willful), that the defendant ha[d] conscious knowledge of that intent (deliberate), and that there [was] time enough for the defendant to deliberate, i.e., time enough to have thought about that intent (premeditate)." *Morris v. State*, 192 Md. App. 1, 31 (2010) (alterations in original) (quoting *Willey v. State*, 328 Md. 126, 133 (1992)). Regarding the elements of deliberation and premeditation, the Court has explained that "[f]or murder 'to be "deliberate" there must be a full and conscious knowledge of the purpose to kill; and to be "premeditated" the design to kill must have preceded the killing by an appreciable length of time.'" *Mitchell*, 363 Md. at

148 (quoting *Tichnell v. State*, 287 Md. 695, 717 (1980)).  An "'[a]ppreciable length of time' simply means 'any amount of time sufficient to convince the trier of fact that the purpose to kill was not "the immediate offspring of rashness and impetuous temper," but was the product of a mind "fully conscious of its own design."'"  *Mitchell*, 363 Md. at 148 (quoting *Willey*, 328 Md. at 133).  Put simply, "[i]f the killing results from a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder." *Tichnell*, 287 Md. at 718; *see also Lipinski v. State*, 333 Md. 582, 589 (1994) (stating that there is premeditation if "the defendant had sufficient time to consider the decision whether or not to kill and weigh the reasons for or against such a choice" (quoting *Willey*, 328 Md. at 138)).

First-degree intent-to-kill murder differs from intent-to-kill murder in the second degree in that the former requires proof of premeditation and deliberation.  *Mitchell*, 363 Md. at 148.  Conversely, second-degree murder, which "is the killing of another person without legal justification, excuse, or mitigation, and with either the intent to kill or the intent to inflict grievous bodily harm," does not require premeditation or deliberation. *Banks v. State*, 92 Md. App. 422, 439 (1992).  Importantly, Judge Moylan recently explained:

> It is tempting to call second-degree murder of [the intent-to-kill variety] "unpremeditated murder," but that would not be literally correct.  Non-premeditation is not an affirmative element of the second-degree crime.  What is involved in proving the lesser-degree of murder is not proof of non-premeditation but only the non-proof of premeditation.  There is a big difference between the two.

8

*Pitts v. State*, 250 Md. App. 496, 501 n.1 (2021); *see also Williams v. State*, 100 Md. App. 468, 477 (1994) (noting that "[s]econd-degree murder is frequently described as unpremeditated murder" but that "[i]t does not . . . require proof of nonpremeditation"— "it is simply an available alternative when there is non-proof of premeditation").

Criminal actors are divided into four categories: (1) principals in the first degree; (2) principals in the second degree; (3) accessories before the fact; and (4) accessories after the fact. *State v. Williams*, 397 Md. 172, 193 (2007), *abrogated on other grounds by Price v. State*, 405 Md. 10 (2008). A second-degree principal "is one who is guilty of [a] felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive." *Williams*, 397 Md. at 193 (alteration in original) (quoting *State v. Sowell*, 353 Md. 713, 718 (1999)). An accessory before the fact "is one who is guilty of [a] felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration." *Williams*, 397 Md. at 193 (alteration in original) (quoting *Sowell*, 353 Md. at 718-19). Notably, the Maryland Legislature "has abrogated 'the distinction between an accessory before the fact and a principal.'" *Owens v. State*, 161 Md. App. 91, 104 (2005) (quoting Md. Code Ann., Crim. Proc. § 4-204).

For specific intent crimes, the State must establish that the accessory before the fact, in addition to aiding the commission of the crime, acted with the requisite intent and that the crime occurred. *See Harvey v. State*, 111 Md. App. 401, 408-09 (1996); *Oates v.*

*State*, 97 Md. App. 180, 188-89 (1993). The mental state of an accessory is judged at the time the aid is provided. *See Oates*, 97 Md. App. at 188-89 ("[B]ecause a killing in a heat of passion is manslaughter and not murder, *an accomplice who aids while in such a state is guilty* only of manslaughter even though the killer is himself guilty of murder." (emphasis added) (quoting Wayne R. LaFave & Austin W. Scott, *Criminal Law* § 6.7, at 581 (2d ed. 1986))). An accessory's level of guilt is not dependent on the mental state of any other participant in the offense. *See Harvey*, 111 Md. App. at 408 ("The mens rea of each participant is independent of that of all other participants. It is the unique mens rea of each defendant that controls the level of guilt of that defendant.").

Based on our review, we have not come across any reported opinions in Maryland addressing the viability of second-degree intent-to-kill murder based on accessory-before-the-fact accomplice liability. We have, however, found at least one opinion involving a conviction seemingly based on this challenged murder theory. *See Lewis v. State*, 285 Md. 705, 707 (1979) (defendant convicted of second-degree murder of his child as an accessory before the fact based on evidence that he contracted another to commit the murder). Importantly, there was no issue raised by the parties or the court about the viability of this theory of murder.

We hold that second-degree intent-to-kill murder premised on accessory-before-the-fact accomplice liability is a cognizable offense. Mr. Garcia's argument to the contrary—that "[a] conviction of second degree unpremeditated intent to kill murder as an accessory-before-the-fact accomplice is legally impossible"—rests, in our view, on two necessary premises: (1) an accessory before the fact who aids in the perpetration of a

10

killing with the intent to kill necessarily acts with deliberation and premeditation and (2) second-degree intent-to-kill murder is an unpremeditated killing.  In explaining our holding, we start, and end, our analysis with the first contention.  As detailed below, we disagree with Mr. Garcia—we believe an accessory before the fact who personally harbors the intent to kill can aid in the commission of a killing without the awareness and reflection required to justify a finding of deliberation and premeditation.

Maryland courts have indicated that it is possible for an accessory before the fact to aid in a killing while harboring the intent to kill and to do so in a manner that does not constitute premeditation or deliberation.  For example, in *Bowers v. State*, 320 Md. 416 (1990), an ineffective assistance of counsel case brought by a defendant convicted of first-degree premeditated murder, the Court made the following comment regarding the defense counsel's failure to admit certain evidence:

> [I]t follows naturally that the jury might well have concluded that *[the defendant] had not possessed the requisite mens rea for premeditated murder.  The jury, therefore, might well have found him to be an accessory to second degree murder*, or perhaps guilty of second degree murder.  At the very least, the jury might well have harbored reasonable doubt as to the premeditated murder charge.

*Id.* at 418, 430 (emphasis added) (citation omitted).  While the Court did not specify the type of second-degree murder referenced in its commentary quoted above, it is reasonable to conclude that the Court was referring to, at the very least, the intent-to-kill variety given that the defendant was "on trial only for first degree premeditated murder." *Id.* at 430.

11

We also find instructive a hypothetical provided by this Court in *Oates v. State*, 97 Md. App. 180 (1993), which we furnished as support for the principle that participants in a single criminal homicide do not necessarily share the same mens rea: "P commits a battery upon D; *D, in the heat of passion aroused by this, procures E to kill P*, which E forthwith does. E (if not affected by the provocation received by D) is guilty of murder; but *D is accessory before the fact only to manslaughter*." *Id.* at 187-89 (emphasis added) (quoting Glanville Williams, *Criminal Law* 390-91 (1961)). Although the accessory in the example was deemed guilty of voluntary manslaughter, voluntary manslaughter is a specific intent crime and, similar to second-degree murder, requires the defendant to have acted with the intent to kill or the intent to inflict grievous bodily harm. *Brown v. State*, 90 Md. App. 220, 229, 232-33 (1992). Indeed, voluntary manslaughter has been defined as "a killing that would otherwise be second degree murder, but for the presence of a mitigating circumstance." *Banks,* 92 Md. App. at 439. We read the hypothetical favorably referenced by this Court in *Oates* as suggesting that an accessory before the fact who harbors the intent to kill does not necessarily act with deliberation and premeditation.

Lastly, we turn to *Eiland v. State*, 92 Md. App. 56 (1992), *rev'd on other grounds sub nom. Tyler v. State*, 330 Md. 261 (1993), where Judge Moylan, in discussing the mental state element of accomplice liability, explained:

> Thus, the triggerman may have premeditated the killing (first degree); *one aider and abettor may have formed the intent to kill only at the last moment* or, indeed, have intended only grievous bodily harm (second degree); while a second aider

12

> and abettor, a cuckolded spouse perhaps, may have been
> acting in hot-blooded response to provocation (manslaughter).

*Eiland*, 92 Md. App. at 78-79 (emphasis added). This language casts further doubt on

Mr. Garcia's assertion that "[a]n accessory before the fact to an intent to kill murder has

. . . deliberated and premeditated the murder."

Guided by the above caselaw, we conclude that an accessory before the fact to

second-degree intent-to-kill murder is cognizable. It is plausible that an accessory before

the fact who, acting on impulse without "sufficient time to consider the decision whether

or not to kill and weigh the reasons for or against such a choice," aids another in the

commission of a homicide with the intent to kill and in the absence of mitigating

circumstances. *Lipinski*, 333 Md. at 589 (quoting *Willey*, 328 Md. at 138)); *see Banks*, 92

Md. App. at 439 (explaining that, in the context of voluntary manslaughter, "[a]

mitigating circumstance may be 'a sudden heat of passion caused by adequate

provocation, before there has been a reasonable opportunity for the passion to cool,' or 'a

subjectively honest but objectively unreasonable belief [by the killer] that he was in

deadly peril'" (alteration in original) (citation omitted) (first quoting *Cox v. State*, 311

Md. 326, 331 (1988); and then quoting *State v. Faulkner*, 301 Md. 482, 506 (1984))). In

such circumstances, the accessory's actions would likely not support a finding of

deliberation or premeditation, though they would probably satisfy the requirements of

second-degree intent-to-kill murder. *See Mitchell*, 363 Md. at 149 (stating "that a murder

committed solely on impulse—the 'immediate offspring of rashness and impetuous

temper'—is not one committed with deliberation and premeditation"); *Banks*, 92 Md.

13

App. at 439 (explaining that second-degree murder, which "is the killing of another person without legal justification, excuse, or mitigation, and with either the intent to kill or the intent to inflict grievous bodily harm," does not require premeditation or deliberation).

Mr. Garcia contends that the proposition that "an accessory before the fact to intent to kill murder has premeditated intent to kill, and consequently, cannot commit unpremeditated intent to kill murder" is supported by *State v. Ward*, 284 Md. 189 (1978), *overruled on other grounds by Lewis v. State*, 285 Md. 705 (1979). According to Mr. Garcia, in that case, "[t]he [C]ourt found that although 'accessoryship presupposes premeditation,' it is theoretically possible to premeditate an intent-to-injure homicide or 'stimulate' another to exact vengeance in a heat-of-passion manslaughter." (quoting *Ward*, 284 Md. at 198). While the Court in *Ward* held that there may be an accessory before the fact to second-degree murder of the grievous bodily harm variety, *see* 284 Md. at 197-200, Mr. Garcia is incorrect in claiming that the Court "found that . . . 'accessoryship presupposes premeditation.'" The Court reached no such conclusion. Prior to announcing its holding, the Court briefly summarized the differing views of commentators regarding the viability of accessories before the fact to murder in the second degree. *See id.* at 197-98. The phrase quoted by Mr. Garcia appeared in the Court's explanation of one commentator's view endorsing such a theory of liability:

> It has been doubted whether there can be an accessory before the fact to manslaughter, since accessoryship presupposes premeditation, and premeditation is incompatible with manslaughter. But . . . an instigator may, in hot blood, stimulate a person incensed with another to execute a deed of

14

> vengeance on such other, when the offense of the perpetrator would be only manslaughter; and we may also hold that an instigator may be guilty of murder in instigating another to commit manslaughter by the rash use of dangerous instrumentalities. A fortiori there may be an accessory before the fact to murder in the second degree.

*Id.* at 198 (quoting 1 Francis Wharton, *Criminal Law* § 272, at 361-62 (12th ed. 1932)). In explaining its holding, the Court provided no indication that it disapproved of second-degree intent-to-kill murder based on accessory-before-the-fact liability. *See Ward*, 284 Md. at 197-200.

Mr. Garcia also cites to the Court's decision in *Mitchell v. State*, 363 Md. 130 (2001), as supporting authority. There, the Court determined that "where the charge is made and the evidence shows that the defendant conspired to kill another person unlawfully and with malice aforethought, the conspiracy is necessarily one to commit murder in the first degree." *Id.* at 149. Mr. Garcia argues that "[t]here is no difference between the 'result of thought' of a conspirator and an accessory before the fact." (quoting *Mitchell*, 363 Md. at 148). Mr. Garcia's reliance on *Mitchell* is misplaced. In holding that conspiracy to commit second-degree intent-to-kill murder is a nonexistent offense, the Court focused on the unlawful agreement element of a criminal conspiracy. *See* 363 Md. at 149. It reasoned "that the kind of awareness and reflection necessary to achieve the unity of purpose and design for a conspiracy is essentially the same as that required for deliberation and premeditation" and that "the agreement itself, for purposes of the conspiracy, would supply the necessary deliberation and premeditation." *Id.* at

15

149. There is no such required showing for an accessory before the fact to second-degree intent-to-kill murder.

For the foregoing reasons, we affirm the judgments of the circuit court.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**