*Roger Johann Garcia v. State of Maryland*, No. 62, September Term, 2021.  Opinion by Eaves, J.

**CRIMINAL LAW — ACCESSORYSHIP**

The Court of Appeals held that it is legally possible for a defendant to be convicted as an accessory before the fact to second-degree murder because a defendant can provide aid on the spur of the moment, thoughtlessly, or rashly, and therefore without premeditation.

**CRIMINAL LAW — ACCESSORYSHIP**

The Court of Appeals held that an accessory before the fact to second-degree murder is different and distinct from a conspiracy to commit second-degree murder because an accessory does not necessarily premeditate like a conspirator does.

**CRIMINAL LAW — ACCESSORYSHIP**

The Court of Appeals held that *Sheppard* liability provides that an accessory to the principal offense is culpable for any incidental offenses committed by another in furtherance of the principal offense regardless of the accessory's intent or knowledge of the incidental offense by the accessory.

Circuit Court for Montgomery County
Case No. 132901C
Argued: May 9, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 62

September Term, 2021

_____

ROGER JOHANN GARCIA

v.

STATE OF MARYLAND

_____

Watts,
Hotten,
Booth,
Biran,
Eaves,
Raker, Irma S.
   (Senior Judge, Specially Assigned)
Getty, Joseph M.
   (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Eaves, J.

_____

Filed: August 11, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this case, we consider whether a valid legal foundation exists to convict a defendant of second-degree intent to kill murder, as an accessory before the fact. The Court of Special Appeals held that it is conceivable for an accessory before the fact to aid, on impulse and without premeditation, another in the commission of a homicide with the intent to kill. *State v. Garcia*, 253 Md. App. 50 (2021), *cert granted*, 477 Md. 382 (2022). That reasoning is consistent with the principal distinction between premeditation and the intent to kill. Therefore, we hold in accordance with *Sheppard v. State*, 312 Md. 118 (1988), *abrogated on other grounds by State v. Hawkins*, 326 Md. 270 (1992), a defendant may be liable as an accessory before the fact to second-degree murder. Accordingly, we affirm the judgment of the Court of Special Appeals.

## BACKGROUND

On the night of June 5, 2017, one day prior to their high school graduation, Shadi Najjar and Artem Ziberov were gunned down while waiting to sell one of Najjar's extra graduation tickets. The event that led to the shooting, however, took place months prior.

In December 2016, a man named Jose Ovilson Canales-Yanez arranged to sell marijuana to Najjar. Although Canales-Yanez initially spoke with Najjar about the purchase, Canales-Yanez's then pregnant wife, Kara Yanez, was present to complete the sale. The sale, however, did not go smoothly. At some point, Kara Yanez alleged Najjar took the marijuana from her without paying, and as Najjar fled, he assaulted her. Despite the alleged assault, neither Canales-Yanez nor Kara Yanez reported the crime to the police. Instead, Canales-Yanez recruited his friends, Edgar Garcia and Rony Galicia (collectively

"Co-Defendants"), to exact his own revenge.[1]  Edgar Garcia later enlisted his half-sibling,

Petitioner, Roger Garcia,[2] to help the Co-Defendants in carrying out the revenge plan.

Specifically, Garcia's role was to help the others inconspicuously communicate with Najjar

because he and Najjar went to the same high school and were about the same age.

Several months after Garcia's recruitment, on May 31, 2017, Garcia became friends

with Najjar on Snapchat, a social media app where users can share pictures, communicate

via text, and see their friends' locations.  A few days after Garcia and Najjar became friends

on Snapchat, Najjar posted a picture to the app advertising an extra graduation ticket he

had for sale.  Later that evening, while in the presence of the Co-Defendants, Garcia told

them about Najjar's Snapchat post.  Sensing an opportunity for revenge, Garcia responded

to the Snapchat post, and following an exchange via the app's texting function, Najjar

---

[1] Canales-Yanez, Edgar Garcia, and Rony Galicia were all tried and convicted for the murders of Najjar and Ziberov.

Following a bench trial, Canales-Yanez was convicted of two counts of first-degree murder, conspiracy to commit murder, and other related offenses.  Those convictions were affirmed on appeal in *Canales-Yanez v. State*, 472 Md. 132 (2021).

After a jury trial, Edgar Garcia was convicted of conspiracy to commit murder, two counts of first-degree murder, and other related offenses.  Those convictions were affirmed on appeal in *Garcia-Gaona v. State*, Nos. 3350 & No. 3358 2021 WL 130513 (Md. Ct. Spec. App. Jan. 14, 2021), *cert. denied*, 474 Md. 725 (2021).

A jury convicted Galicia of two counts of first-degree premeditated murder, two counts of first-degree felony murder, conspiracy to commit murder, and other related offenses. Those convictions were affirmed on appeal in *State v. Galicia*, __ Md. __ (2022).

Roger Garcia originally went to trial with Galicia, but a mistrial was granted for Roger Garcia only as his attorney became ill mid-trial and could not continue.

[2] Unless otherwise stated, Garcia herein refers to Petitioner, Roger Garcia, and not Edgar Garcia.

2

agreed to meet with Garcia later that night to sell the extra graduation ticket.[3] Ultimately, during the arranged meet-up, Najjar and Ziberov, a passenger in the vehicle, were shot and killed while waiting in their car for Garcia.

After an investigation by law enforcement, the State charged Garcia in an indictment with eight offenses, including murder, conspiracy to commit murder, armed robbery, and use of a firearm in a felony or violent crime. At trial, after the close of evidence, the trial court instructed the jury on first-degree premeditated murder, second-degree intent to kill murder, second-degree grievous bodily harm murder, and accomplice liability. The jury found Garcia guilty of two counts of second-degree murder, as well as the two corresponding firearm-use counts. The jury acquitted Garcia on all other charges.

Garcia appealed his conviction to the Court of Special Appeals. In his appeal, Garcia contended that an accessory before the fact to second-degree intent to kill murder necessarily deliberates and premediates the murder and therefore cannot be guilty of second-degree murder. In a reported opinion, the Court of Special Appeals rejected this theory and affirmed the judgment of the trial court. *Garcia v. State*, 253 Md. App. 50 (2021).

---

[3] Although it was Garcia's Snapchat account that responded to the advertisement, it was disputed at trial as to whether it was Garcia or the Co-Defendants who drafted and sent the response.

Garcia petitioned this Court for a writ of *certiorari*, which we granted on February 9, 2022. 477 Md. 382 (2022). Garcia presented the following questions (which we have rephrased slightly)[4] for our review:

1. Is it legally impossible to be convicted of second-degree intent to kill murder as an accessory before the fact?

2. If a jury considered a legally impossible theory of liability must the conviction be vacated?

For the reasons outlined below, we answer the first question in the negative, and therefore, we need not address the second.

## DISCUSSION

Garcia argues that an accessory before the fact to second-degree murder acts with intent and foreknowledge of the future murder when the accessory provides aid. Garcia opines that this intent and foreknowledge is the same as the sort of reflection needed to prove premeditation. Therefore, according to Garcia, the accessory's inherent premeditation should elevate a crime of accessory before the fact to second-degree intent to kill murder to first-degree premeditated murder. Additionally, Garcia contends that the law of accomplice liability does not permit an accessory to be guilty as an accessory to the incidental offense.

---

[4] Garcia's questions presented as written in his writ for *certiorari* are as follows:

I. Is it legally possible to be an accessory before the fact to non-premeditated intent to kill murder?

II. Must a conviction be vacated if the jury considered a legally impossible theory of liability?

4

In opposition, however, the State argues that aid and premeditation are not the same or even substantially similar. The State bases its argument on the fact that an accessory's state of mind is assessed at the time they themselves act, and accessory's state of mind is independent from the state of mind of the other actors. The State further contends that an accessory before the fact, pursuant to accomplice liability, is culpable for the incidental crimes committed, by others, in furtherance of the planned crime.[5]

These arguments raise two questions as a matter of law. First, does the accessory's aid in the future crime equate to premeditation? Second, does accomplice liability allow for an accessory before the fact to second-degree murder? To answer these questions, we first look to the law and how it defines murder and accomplice liability, and then we apply those definitions to the case before us. Accordingly, as legal questions, we apply the *de novo* standard of review. *Shannon v. State*, 468 Md. 322, 335 (2020).

## A.  *Murder Defined*

Common law murder is the unlawful "killing of one human being by another with the requisite malevolent state of mind and without justification, excuse, or mitigation." *Ross v. State*, 308 Md. 337, 340 (1987). Although murder is still a common law crime in Maryland, the General Assembly has, by statute, separated it into degrees, with the express purpose of mitigating punishment. *See* 1809 Md. Law, ch. CXXXVIII; *Davis v. State*, 39

---

[5] The State also argues that Garcia can be, pursuant to accomplice liability, an accessory before the fact to second-degree intent to kill murder based on the semantic fallacy of the false affirmative. Due to our holding herein, and for the reasons stated below, we do not need to address this argument.

Md. 355, 375 (1874) (holding that "[t]he express object of the statute in dividing the crime into degrees, was the mitigation of the punishment in cases of the second degree"); *Weighorst v. State*, 7 Md. 442, 451 (1855) (noting that "[t]he act of the Assembly does not create a new offence in distinguishing between murder of the first and second degrees. The design was to discriminate in awarding the punishment").

Since 1809, the murder statutes have remained relatively true to their original drafting and enactment.[6] Maryland Code ("Md. Code") (1957, 2021 Repl. Vol., 2021 Supp.), Criminal Law Article ("CR") §§ 2-201, 2-204, maintain the first- and second-degree distinction first codified in 1809. Accordingly, first-degree murder is:

(a) A murder is in the first degree if it is:

(1) a deliberate, premeditated, and willful killing;

(2) committed by lying in wait;

(3) committed by poison; or

(4) committed in perpetration of or an attempt to perpetrate [an enumerated felony].

CR § 2-201.

---

[6] In 1992, the General Assembly Legislative Policy Committee established the Article 27 Revisions Committee ("Article 27 Committee"). The Article 27 Committee's purpose was to "revise, restate, and recodify the law of the State [of Maryland] relating to criminal law." *Johnson v. State*, 467 Md. 362, 382 (2020). However, the General Assembly, after reviewing the suggestions provided to it by the Article 27 Committee, opted not to make any substantive changes to first-degree or second-degree murder. Legis. Servs., *Fiscal and Policy Note, House Bill 11*, (2002 Session). And since the General Assembly's 2002 recodification of Article 27 into the Criminal Law Article, there have only been stylistic changes to the first-degree and second-degree murder statutes.

CR 2-204 defines second-degree murder as "[m]urder that is not in the first-degree under [CR] § 2-201." CR § 2-204(a).

In essence, CR § 2-201(a)(1)–(4) describe the various *mens rea* (states of mind) "and circumstantial modalities that will qualify murder as murder in the first degree, [they] do not represent separate crimes but only establish alternative ways of finding the requisite aggravation." *Jeffries v. State*, 113 Md. App. 322, 335 (1997) (citing *Wood v. State*, 191 Md. 658, 666-67 (1948)).

Unlike first-degree murder, second-degree is broader. However, this Court has "defined it more precisely as embracing four kinds of murder." *Mitchell v. State*, 363 Md. 130, 147 (2001). The four kinds of murder are killings accompanied by any one of the following states of mind: (1) killing another with the intent to kill—"bring[ing] about the death of another," *State v. Earp*, 319 Md. 156, 163 (1990)—without premeditation; (2) killing another person with the intent to inflict serious bodily harm that death would be the likely result; (3) depraved-heart murder; and (4) felony murders, where the killing is done during the commission of certain felonies. *See Mitchell v. State*, 363 Md. 130, 147 (2001).

One issue here, as articulated by Garcia, is related to the first variety of second-degree murder—the killing of another with the intent to kill. We note that the difference between this variety of second-degree murder and first-degree murder is the former's lack of the element of premeditation. *Id.* at 148. The reason for the distinction is because "the absence of premeditation does not prevent there being present [the intent to kill]." *Abney v. State*, 244 Md. 444, 448 (1996). Instead, one must prove the element of premeditation by showing that the "design to kill must have preceded the killing by an appreciable length

7

of time, that is, time enough to deliberate." *Tichnell v. State*, 287 Md. 695, 717 (1980). This Court has interpreted an appreciable length of time as "any amount of time sufficient to convince the trier of fact that the purpose to kill was not the immediate offspring of rashness and impetuous temper but was the product of a mind fully conscious of its own design." *Willey v. State*, 328 Md. 126, 133 (1992) (citations and quotation marks omitted).

Garcia contends, nevertheless, that a defendant always premeditates a murder if the defendant acts as an accessory to that murder even if it is of the second-degree intent to kill variety. According to Garcia, an accessory by very definition, cannot possess the intent to kill without premeditation. Thus, to better respond to Garcia's argument, we now turn to how the law defines accomplice liability.

**B.    *Accomplice Liability***

Maryland, for a long time, adhered to the common law doctrine of accessoryship that distinguishes an accessory before the fact from a principal in the second degree. The Court in *State v. Ward*, described the common law distinction as follows:

> A principal in the second degree is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive. An accessory before the fact is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration.

284 Md. 189, 197 (1978) *overruled in part on other grounds by Lewis v. State*, 285 Md. 705 (1979)).

The common law "presence" distinction was important for several reasons. First, it could help the defendant in preparing a defense. 4 William Blackstone, Commentaries on

the Laws of England * 40 (1769). Second, it allowed judges to avoid imposing the death penalty in some felony cases. Rollin M. Perkins, Criminal Law * 669 (2nd ed. 1969). Third, it required that an accessory could not be tried until after the principal had been convicted. 4 Blackstone at * 40. Fourth, it made it so a defendant could not be acquitted as a principal and then later indicted as an accessory before the fact because the "acquittal of the guilt of one may be an acquittal of the other also." *Id.*

This common law distinction and the reasoning behind it, however, was not without criticism. In *State v. Williamson*, the defendant presented this Court with the question of whether to "abandon the ancient common law distinction between principals and accessories before the fact." 282 Md. 100, 111 (1978) (Levine, J., concurring). In his concurrence, Judge Irving A. Levine criticized Maryland for "being the only jurisdiction in the United States (and perhaps the only common law jurisdiction in the world) that has retained the common law doctrine of accessoryship in virtually the same form as it existed at the time of William Blackstone . . . ." *Id.*

Judge Levine opined that because an accessory before the fact and a principal are "equally culpable and therefore subject to the same punishment[] . . . the classification of parties as principals and accessories had little, if any, substantive significance." *Id.* at 112 (internal citation omitted). Further, Judge Levine expressed that the distinction created "highly technical procedural rules" that shielded accessories from punishment "notwithstanding overwhelming evidence of their criminal assistance." *Id.* (citation omitted). The majority, however, did not adopt Judge Levine's view expressed in his concurrence. Instead, the majority held that the abrogation of the common law distinction

9

was not relevant to its holding, and thus declined to address the issue. *Id.* at 110 (majority opinion).

This Court revisited the common law distinction issue in *State v. Sowell*, but it did little to resolve the matter. 353 Md. 713 (1999). In *Sowell*, Judge Dale R. Cathell writing for the majority discussed Judge Levine's criticism of the common law distinction between accessories and principals in *Williamson* and gave his reasoning great weight. *Id.* at 719. Further, Judge Cathell noted that recent judicial decisions had slightly eroded the common law distinction. *Id.* at 725. However, what had been eroded were the "technical procedural rules" of the common law distinction. *Id.* (quoting *Lewis v. State*, 285 Md. 705, 716 (1979)) (holding that an accessory before the fact can be convicted before the principal).

Despite the erosion of the "technical procedural rules," the public policy reasons behind the distinction had been untouched and unchanged since 1906. *Id.* at 724. Thus, the Court reasoned that although it had the power to completely abrogate the common law distinction, because the public policy had been largely untouched throughout the law's history, a complete abrogation of such a long-standing common law principal is a task "generally better left to the legislative body of [Maryland]" and not the Judiciary. *Id.* at 726 (citing *State v. Wiegmann*, 350 Md. 585, 607 (1998)).

In 2000, the Maryland General Assembly followed the Court's guidance in *Sowell* and revised the accessory before the fact statute. The Commission to Revise Article 27

10

chaired by Judge Joseph F. Murphy[7] recommended House Bill 167 that passed the General Assembly and "abolished the common law distinction between an accessory before the fact and a principal . . . ." 2000 Md. Laws, ch. 339. In other words, the Legislature, heeding the prophetic words of Judge Levine, replaced the common law distinction with "an all-encompassing doctrine which would treat all those who knowingly procure, command, counsel, encourage, aid or abet a felon in the commission of a crime as principals regardless of whether the aider or abettor was actually or constructively present at the scene of the crime." *Williamson*, 282 Md. at 114 (Levine, J., concurring).

The Legislature did not, however, disturb the factual definitions of an accessory before the fact and second-degree principal. Instead, "the words accessory before the fact and principal have retained their judicially determined meanings." Maryland Code "Md. Code"), Criminal Procedure Article ("CP") § 4-204(a). Thus, the factual distinctions remain relevant for purposes of describing the two kinds of accomplices. Nevertheless, common to both types of accomplices is that there still must be a showing that the accomplice possessed some form of criminal intent, or *mens rea*.

An accessory's *mens rea* is "unique" to them, i.e., an "aider and abettor or an accessory before the fact may be more blameworthy than the principal in the first degree or equally blameworthy or less blameworthy." *Harvey v. State*, 111 Md. App. 401, 408

---

[7] At the time Judge Murphy was simultaneously the Chair of the Article 27 (crimes and punishment) Revisions Committee and the Chief Judge of the Court of Special Appeals.

(1996). But although an accessory's intent is "independent" from a principal's, an accessory (or the former) may nevertheless be guilty of a principal's actions. *Id.* This is illustrated by this Court's holding in *Sheppard,* 312 Md. 118 (1988).

In *Sheppard*, the defendant and two other men, one of whom was armed, robbed a convenience store in Anne Arundel County. 312 Md. at 120. As the three men fled to their getaway car, operated by a fourth man, the armed man shot at a deliveryman who had pursued them out of the store. *Id.* Eventually, the police spotted their getaway car, and pulled over the four men. *Id.* During the stop, the police officers ordered the driver to turn off the car's ignition. *Id.* The driver ignored the police officer's command, and instead accelerated the car. *Id.* The sudden acceleration caused the police to shoot the vehicles rear tires out. *Id.* at 120-21. The now unstable car collided with a parked car down the road, and the crash rendered the getaway car immobile. *Id.* at 121.

The defendant attempted to climb from the car crash, however, he was apprehended by the police. *Id.* Meanwhile, the three other men were able to escape the crash and began fleeing the scene. *Id.* The police chased the three men, and during the chase one of the three men fired several shots at the police officers. *Id.*

Ultimately, at trial, the jury convicted the defendant of, in addition to other offenses, three counts of assault with intent to murder—based on the shots fired by his co-defendant at the deliveryman and the police officers. *Id.* The defendant argued, on appeal, that he did not aid or abet his co-defendants in the commission of the assaults with the intent to murder. *Id.* This Court held to the contrary. *Id.* at 123.

12

The *Sheppard* Court explained that an accessory before the fact can be found guilty of an incidental criminal offense if the State proves that the defendant participated in the "principal offense either as a principal in the first degree (perpetrator), a principal in the second degree (aider and abettor) or as an accessory before the fact (inciter)." *Id.* at 123. In addition, "the State must establish that the charged offense was done in furtherance of the commission of the principal offense or the escape therefrom." *Id.* In other words, the defendant's guilt in the assaults with intent to murder "rests on the fact he aided and abetted" the armed robbery. *Id.*

Now, with murder and accomplice liability defined, we examine these concepts together by applying them to the facts of Garcia's case.

## C.     *An accomplice to a second-degree intent to kill murder need not premediate.*

In *State v. Ward*, this Court held a defendant can be an accessory before the fact to second-degree murder pursuant to common law accessoryship. 284 Md. 189 (1978). In *Ward*, the jury found the defendant guilty of being an accessory before the fact of second-degree murder.[8] *Id.* at 193 n.6 (1978). On petition for post-conviction review, the court ordered a new trial. *Id.* Prior to the new trial, however, the circuit court dismissed the case, agreeing with the defendant that it is impossible to be an accessory before the fact to

---

[8] The State charged the defendant with: (1) conspiracy to commit murder (Ward); (2) conspiracy to commit murder (Godbout); (3) being an accessory before the fact of second-degree murder; (4) murder; and (5) attempted murder. *Ward*, 284 Md. at 193 n.6.
Ultimately, the jury convicted the defendant of counts one, two, and three, while the State *nolle prosequi* counts four and five. *Id.* On a petition for post-conviction review, the court dismissed counts one and two as being barred by the statute of limitations and ordered a new trial on count three. *Id.*

13

second-degree murder. *Id.* at 193–94. The State appealed the circuit court's dismissal and asked this Court to determine whether common law accessoryship permitted a defendant to "be an accessory before the fact of murder in the second degree[.]" *Id.* at 194.

The Court reasoned that if the defendant's intent was to commit "grievous bodily harm, and death occurred in consequence of the attack" then the "homicide would be with malice aforethought but not willful, deliberate and premeditated." *Id.* (citing *Gladden v. State*, 273 Md. 383, 387 (1974)). Although this Court used second-degree intent to do serious bodily injury murder as an example, we held that a defendant "may be an accessory before the fact to murder in the second degree," and there is a "rational basis" for doing so. *Id.* at 199; *see Bowers v. State*, 320 Md. 416, 430 (1990) (broadly stating that a jury could convict a defendant as an accessory before the fact to second-degree murder). And, therefore, the circuit court's dismissal of count three was improper. *Ward*, 284 Md. at 201.

Applying the "rational basis" found in *Ward*, Garcia's aid was not premeditated. Here, it is uncontested that Garcia befriended Najjar on Snapchat and that Garcia alerted the Co-Defendants to Najjar's advertisement on Snapchat. Garcia's act of becoming Najjar's friend on Snapchat and alerting the Co-Defendants are considered aid. First, a reasonable inference is that Garcia befriended Najjar on Snapchat in order to provide the Co-Defendants with an inconspicuous way to communicate with Najjar and access his whereabouts. Second, another reasonable inference is that Garcia alerted the Co-Defendants to the Snapchat advertisement to give them a chance to meet, face-to-face, with Najjar. But because premeditation is not an element of second-degree murder crime, the presence or absence of any alleged premeditation is irrelevant.

14

Moreover, both acts of aid could have been done without premeditation or a meeting of the minds as to an anticipated or planned murder.  In addition, we agree with the Court of Special Appeals that it is plausible for an accessory before the fact to second-degree murder to have acted "on impulse without 'sufficient time to consider the decision whether or not to kill and weigh the reasons for or against such a choice,' aid[ed] another in the commission of a homicide with the intent to kill and in the absence of mitigating circumstances." *Garcia*, 253 Md. App. at 64 (quoting *Lipinski v. State*, 333 Md. 582, 589 (1994)).

Garcia also contends that this Court's decision in *Mitchell v. State* provides that it is impossible to commit a non-premeditated intent-to-kill murder as an accessory before the fact—however, *Mitchell* reaches a different conclusion.  363 Md. 130, 150 (2001).

In *Mitchell*, this Court faced the question of whether *conspiracy* to commit second-degree murder is legally possible.  *Id.* at 133 (emphasis added).  The Court, adopting the approach taken by California and Michigan, determined that the meeting of the minds necessary to create a conspiracy was the same as the sufficient thought (reflection) needed to satisfy the element of premeditation.  *Id.* at 149.  Thus, the Court held that the prior planning exhibited by the actor to a conspiracy is equal to premeditation, and therefore conspiracy to commit second-degree murder is legally impossible.  *Id.*

An accessory before the fact, unlike a conspirator, does not always act with a "prearranged concert of action."  *Coleman v. State*, 209 Md. 379, 384 (1956).  In *Apostoledes v. State*, this Court addressed whether a defendant acquitted on a charge of conspiracy to commit murder precluded a new trial predicated on the theory that the

15

defendant was a principal in the second-degree to the same murder. 323 Md. 456 (1991). The Court held that although one actor may "intentionally aid, counsel, or encourage another in the commission of a crime," they could have done so without an agreement (conspiracy). *Id.* at 462. Therefore, the Court held that a new trial, based the defendant being a principal in the second-degree to the same murder, was not barred. *Id.*

Here, trial counsel presented the jury in Garcia's case with an abundance of evidence over the course of the trial. And at the close of evidence, the jury considered whether Garcia's own personal actions coupled with those of the other actors rose to the level of a conspiracy to murder Najjar. Ultimately, the jury found that Garcia's aid did not rise to the level of conspiracy and acquitted Garcia of that charge. In sum, the jury inherently found that Garcia's aid was not equivalent to premeditation and found him guilty of second-degree murder.

**D.      *Accomplice liability permits an accessory before the fact to second-degree murder.***

Garcia argues that the type of accomplice liability established in *Sheppard v. State* does not allow for an accessory before the fact to be found guilty as an accessory before the fact to the subsequent offense. 312 Md. 118 (1988). However, the State argues that this contention misapplies *Sheppard*. We agree with the State.

This Court in *Sheppard* defined an accomplice as one who "as a result of [their] status as a party to an offense, is criminally responsible for a crime committed by another." *Id.* at 122. This Court further held that not only is the accessory criminally responsible for the "planned, or principal offense" but also the "incidental" offenses. *Id.* Thus, the

definition is of an accomplice is one who, as a result of their status as a party to an offense, is criminally responsible for planned and incidental crimes committed by another. *Id.*

We cannot say if *Sheppard* liability was the basis upon which the jury found Garcia guilty of second-degree murder, but it is nevertheless not for this Court or any court to examine because imbued in the history of the Court is the principle that jury deliberations are secret.

The secrecy of jury deliberations began with Lord Mansfield's holding in *Vaise v. Delaval*, which created the doctrine limiting the impeachment of jury verdicts. 99 Eng. Rep. 944 (K. B. 1785). The Mansfield Rule has since been altered by various courts. Early changes came at the state level in *Write v. Illinois & Mississippi Tel. Co.*, 20 Iowa 195 (1866). Next, at the federal level, the Supreme Court decided *Mattox v. United States*, 146 U.S. 140 (1892)—eventually codified into the Federal Rules of Evidence as Rule 606(b). As time went, on the Mansfield Rule and its adaptations slowly permeated American jurisprudence, eventually developing into other doctrines with the overarching goal to protect the details of the jury deliberation process from the public's prying eye. *See Stokes v. State*, 379 Md. 618, 638 (2004).

Thus, the "secrecy of [jury] deliberations is the cornerstone of the" modern-day American judicial system, and, generally, nobody, including the trial judge, "has a 'right to know' how a jury, or any individual juror, has deliberated or how a decision was reached by a jury or juror." *United States v. Thomas*, 116 F.3d 606, 618 (2nd Cir. 1997).

17

Instead, to keep jury deliberation process shielded, we only consider the legal theories presented to the jury prior to their deliberation and determine if said legal theories can be properly considered.

At Garcia's trial, the trial court judge instructed the jury on accomplice liability as follows: [9]

> So, the final instruction I'm going to give you is an instruction which is called accomplice liability and this comes up in the context of throughout these instructions, you've heard the term primary actor or accomplice and many of these instructions are written in, in the contemplation that a person charged actually commits the offense. So, accomplice liability comes in the criminal law to deal with a situation like this. You've probably heard of the situation where let's say a robbery occurs. Someone goes into a store; another person sits in the car. The robbery occurs, they get in the car and they drive away and that was the plan. The person who sits in the car is equally as guilty as the person that goes inside the bank or the store. That's called accomplice liability. So, that's the sort of general concept of what we're talking about when we speak about accomplice liability and that's what this instruction relates to in this case.

---

[9] Although the trial court gave a modified jury instruction, it is consistent with Maryland Pattern Jury Instruction 6:00 that provides, in relevant part, the following:

> The defendant may be guilty of (crime) as an accomplice, even though the defendant did not personally commit the act that constitutes that crime.

> * * *

> The defendant may also be found guilty as an accomplice of (a) crime(s) that [he] [she] did not assist in or even intend to commit.

> * * *

> It is not necessary that a defendant knew his accomplice was going to commit an additional crime. Furthermore, the defendant need not have participated in any fashion in the additional crime.

18

So, the defendant may be found guilty of first-degree murder, second-degree murder, use of a firearm during the commission of a felony or armed robbery as an accomplice, even though the defendant did not personally commit the acts that constitute each one of those crimes. In order to convict the defendant of any of the above enumerated charges as an accomplice, the State must prove that one or more of those charges occurred and that the defendant, with the intent to make the crime happen, knowingly aided, counseled, commanded or encouraged the commission of the crime, or communicated to a participant in the crime that he was ready, willing and able to lend support if needed.

A person need not be physically present at the time and place of the commission of the crime in order to act as an accomplice. The mere presence of the defendant at the time and place of the commission of a crime is not enough to prove that the defendant is an accomplice. If the presence at the scene of the crime is proven, that fact may, may be considered, along with all the surrounding circumstances in determining whether the defendant intended to aid a participant and communicated that willingness to a participant.

The defendant may also be found guilty as an accomplice of a crime that he did not assist in or even intend to commit. In this case, in order to convict the defendant of an additional crime, the State must prove beyond a reasonable doubt: First, that the defendant, that the defendant committed the intended crime either as a primary actor or as an accomplice; two, that addition, that an additional crime was committed by an accomplice; and, third, that the additional crime was committed by an accomplice in furtherance of, or during the escape from the underlying intended crime.

This instruction can apply to any and all the crimes charged in this case. For example, if the intended crime was murder, and during the commission of the murder an armed robbery occurred, the defendant can be found guilty of the armed robbery as well. If the intended crime was armed robbery, and during the commission of the armed robbery the murder occurred, the defendant could be found guilty of the murder as well. It is not necessary that the defendant knew his accomplice was going to commit the additional crime; further, the defendant need not have participated in any fashion in the additional crime. In order for the State to establish accomplice liability for the additional crime, the State must prove that the defendant actually committed the planned offense or the defendant aided and abetted in that offense, and that the additional crime, criminal offense, not within the

19

original plan, was done in either furtherance of the commission of a planned offense or escape therefrom.

During closing arguments, the attorney for the State reiterated these jury instructions, by telling the jury that if they found Garcia connected with Najjar on Snapchat to "scare him with some guns, and then the murders happened in furtherance of the scaring with some guns, [Garcia] is guilty of murder. . . ." In other words, Garcia could have, when he connected with Najjar, only intended to aid in the commission of a first-degree assault; however, if in furtherance of the first-degree assault the murders were committed, then Garcia would be guilty of the murders as an accomplice because he aided in the commission of the first-degree assault.

Given that the hypothetical was a proper application of *Sheppard* liability and the jury instruction accurately stated the law of accomplice liability, the jury properly considered the legally cognizable theory that Garcia could be convicted as an accessory before the fact to first or second-degree murder. And therefore, the jury could have found Garcia guilty of second-degree murder as an accessory before the fact.

## CONCLUSION

In *Ward*, we held that, pursuant to common law accessoryship, there lies a "rational basis" for a defendant to be guilty as an accessory before the fact to second-degree murder. Since our holding in *Ward*, however, the Legislature abrogated common law accessoryship by enacting Maryland Criminal Procedure § 4-204. Although, the abrogation allows for an accessory to be "charged, tried, and convicted" as a principal, the two still maintain their

20

own distinct definitions. Thus, the "rational basis" in *Ward* is still applicable to statutory accessoryship.

In fact, the Court of Special Appeals even relied on this "rational basis" when it held that it is conceivable for Garcia, acting as an accessory before the fact, to have, on impulse and without premeditation, aided his co-defendants in the commission of a homicide with the intent to kill. We agree with the Court of Special Appeals. Based on our holdings in *Mitchell* and *Apostoledes*, an accessory before the fact does not necessarily premeditate.

Likewise, Garcia's conviction is grounded on our holding in *Sheppard*, where we held that an accessory, by nature, is guilty of planned and incidental crimes committed by another. That is, Garcia did not need to intend to aid in the commission of the murders but, as he did here, only intend to aid his co-defendants in some other crime.

In summation we hold the following:

1. An accessory's aid can be provided on the spur of the moment, thoughtlessly, or rashly, and thus without premeditation;

2. An accessory before the fact to second-degree murder is different and distinct from conspiracy to commit second-degree murder; and

3. *Sheppard* liability provides a legally cognizable basis upon which an accessory before the fact to an initial crime can be convicted as an accessory before the fact to an incidental crime.

21

We therefore find no reason to disturb the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**